| | |
|---|---|
| 19 | 319 |
| 60 | 143 |
| 19 | 319 |
| 69 | 236 |

## Clark *against* Whitaker and others.

An unlawful taking of the goods of another, out of his possession, with intent to convert them to the use of the taker, is itself a conversion, and not merely evidence of it.

So the using of a thing without the license of the owner, and also a wrongful sale of it, is a conversion.

Therefore, where it was proved, in an action of trover, for certain articles of household furniture, that the defendant, in the absence, and without the consent or knowledge, of the plaintiff, personally took possession of his house, which had been kept by him as a public hotel and boarding-house, and of the barn belonging to it, and of the property in those buildings, of which the plaintiff was the owner, consisting principally of furniture and provisions suitable for such an establishment; set up and carried on therewith the same business, in his own name, and on his own account; employed clerks and agents for that purpose; took down the sign of the plaintiff and substituted his own; used and consumed a portion of the property; mingled it with similar articles which he procured for the concern; and, in his own name, also sold and disposed of the remainder, and appropriated the avails to his own use and benefit; and treated the property, in all respects, as if it belonged only to himself; it was held, that these acts constituted a conversion of the property by the defendant.

*Windham,*
July, 1848.

Clark
*v.*
Whitaker.

Where a party was not personally engaged in the acts of taking possession, using and disposing of the property in question, but coöperated with the principal actor, by aiding and abetting him in doing those acts, and subsequently recognized and approved of them; he was held to be chargeable with the conversion.

And where another party, who had no active personal agency in the taking of the property, or the subsequent use or disposition of it, advised and assisted in the measures taken to obtain possession of it; and the acts constituting a conversion were done in part for his benefit, and he subsequently approved of and adopted them; it was held, that this party, also, was chargeable with the conversion.

It is not a sufficient ground for a new trial, that the verdict is merely against a preponderance of the testimony; nor that the court might, on an examination of the evidence, have come to a different result; but it is necessary that the verdict should, in the opinion of the court, be manifestly and palpably erroneous.

This doctrine is especially applicable to a case, where the proof consisted partly of declarations, and partly of circumstances from which inferences were to be drawn and presumptions raised as to the main fact in controversy; where the credibility of the principal witness of the prevailing party, was to be determined: and where there was much conflicting testimony on all these points.

In trover, the rule of damages is the value of the property converted, with interest from the time of the conversion.

It is not sufficient for a party, who seeks a new trial, for the excessiveness of the damages, merely to raise a doubt whether they are not too large; but it is incumbent on him to show affirmatively, and most satisfactorily, that they are so, and to what extent.

THIS was an action of trover, for certain articles of household furniture, brought by *Griffin Clark*, against *Horace Whitaker, Henry L. Clark, Amasa C. Hall* and *Edmund Perkins.* A new trial having been granted in this cause, pursuant to the decision in 18 *Conn. R.* 543. 550. it was tried again, at *Brooklyn, October* term, 1847, before *Storrs*, J.

The prominent questions of fact, on this trial, as on the former, were, whether there had been a conversion of the plaintiff's property; and if so, whether the defendants were severally chargeable with it; and what was the value of the property converted. To establish these points in his favour, the plaintiff introduced the testimony of the following witnesses: *Julian F. Balcom, William Clark, Daniel R. Baker, Christopher J. Avery, Daniel P. Smith, George Martin* and *Josiah C. Jackson.* Here the plaintiff rested.

To repel the claims of the plaintiff, and to disprove and discredit the testimony of his witnesses, the defendant introduced the testimony of the following witnesses: *Z. R. Rob-*

bins, Hamlin B. Buckingham, William D. Ripley, Henry Allen, Robert Havens, Horace Herrick, William C. Potter, A. G. Frink, Daniel M. Prentice, John B. Shaw, Edwin Gavitt, Stephen Tracy, Edwin A. Clark and Henry R. Hammond. H. Strong, L. F. S. Foster and J. A. Hovey, Esqrs., also stated what was the testimony of some of the witnesses for the plaintiff, on the former trial. The testimony of the witnesses on both sides appears substantially, and for the present purpose sufficiently, in the opinion of the court.

The following documents were proved, and admitted in evidence to the jury. 1. A copy of the appointment of A. G. Frink, as overseer to Griffin Clark, [the plaintiff.] dated July 24th, 1844. 2. A copy of further proceedings of the selectmen, on the same subject, dated August 16th and 27th, 1844. 3. Copy of an inventory of Griffin Clark's estate, made out by his overseer, and left in the town-clerk's office, October 9th, 1844. 4. Copy of the account of Edmund Perkins, as overseer to Griffin Clark, dated February 17th, 1845. 5. Agreement between Henry L. Clark and Griffin Clark, dated August 3rd, 1844. 6. Bill of sale from Griffin Clark and his overseer, Edmund Perkins, to Henry L. Clark, dated September 24th, 1844. 7. Bill of sale from the same to Horace Whitaker, dated September 24th, 1844. 8. The account of Griffin Clark with A. C. Hall, agent, and with H. Whitaker and H. Whitaker & Co., paid and settled September 24th, 1844. 9. Two mortgages of Griffin Clark to H. Whitaker, one dated February 7th, 1843, and the other February 17th, 1844. 10. Mortgage from the same to Daniel M. Prentice, dated June 28th, 1844. 11. Mortgage from the same to Henry Allyn, dated July 27th, 1844.

The only conversion of the property described in the declaration, to which the plaintiff adduced evidence, and on which he relied for a recovery, was a conversion by H. L. Clark, and the other defendants, or some of them, in connexion with him, in taking, using and disposing of such property. These acts were, and were conceded to be, prior to the appointment of the defendant, Perkins, as overseer of the plaintiff.

The plaintiff claimed, that the notice given to him of the intended appointment of the defendant, Perkins, as overseer of the plaintiff, on the 27th of August, 1844, was insufficient;

*Windham,*
*July, 1848.*

Clark
*v.*
Whitaker.

and that the appointment was therefore void. The defendants resisted this claim; and also claimed, and prayed the court to instruct the jury, that even if the notice was not sufficient to justify the magistrate and select-men in making the appointment, in a suit against them; still it was a protection to the overseer, who acted under such appointment, and to all who acted under him, and by his authority.

The court omitted so to charge the jury.

The plaintiff further claimed, that no copy of the inventory was left at the town-clerk's office, by the defendant, *Perkins,* as overseer, until after the sale made by him to the defendants, *Whitaker* and *H. L. Clark;* and that therefore, his acts as overseer were void, and his appointment conferred no authority. The defendants resisted this claim.

The court charged the jury, that it was the duty of the overseer to leave a copy of the inventory at the town-clerk's office, within a reasonable time; and if the inventory in question was not so left, the overseer would be liable in trespass or trover, for taking and converting the plaintiff's property; but that he would not be liable in this action, unless he participated in the conversion.

The jury returned a verdict in favour of the plaintiff against the defendants *Whitaker, H. L. Clark* and *A. C. Hall,* for 500 dollars damages, and costs; and found the defendant *Perkins, not guilty.* The defendants, thus subjected, moved for a new trial, for a misdirection; because the verdict was manifestly against the weight of evidence in the cause; and because the damages were unreasonable and excessive.

*Strong* and *Foster,* in support of the motion, contended, 1. That the defendants were entitled to the instruction asked for, in respect to notice. The notice, under the circumstances, was sufficient; but the defendants prayed that the jury should be instructed, that the appointment would protect the overseer, and those who acted under him, or by his authority, even if the notice was not sufficient. So is the law on this subject. The magistrate and the select-men are, by statute, constituted a board to decide on these questions. The person by them appointed overseer, and who acts in good faith, is to be protected; and so are the persons who act under him, and by his authority. *Simms* v. *Slacum,* 3 *Cranch,* 300.

*Ammidon* v. *Smith*, 1 *Wheat.* 447. *Gillett* v. *Baldwin*, sup. ct. *Sept.* 1836, *cor. Bissell*, J.

2. That the instruction that the overseer would be liable in trespass, if he failed to leave a copy of the inventory, at the town-clerk's office, within a reasonable time, was erroneous.

3. That the verdict was against the evidence in the cause. In the first place, there was no evidence to support an action of *trover.* Secondly, there was no *joint* act done, by the defendants. Thirdly, there was no *combination* among the defendants. The verdict shows, that there was no combination, to which *Perkins,* one of the defendants, was a party; and there is no more evidence against the three than against the four.

4. That the damages are unreasonable and excessive. The utmost to which the plaintiff can, in any event, be entitled in damages, is the amount used and consumed between the 13th and 27th of *August;* that being the time which elapsed, after *H. L. Clark* took possession, and before *Perkins* took possession as overseer in the second stage. This was a small amount of provisions, &c., in all less than one fifth, and probably less than one tenth, of the amount of the verdict.

*Catlin* and *Hovey,* contra, contended, 1. That the omission of the court to charge the jury in the manner claimed by the defendants, was unimportant and unexceptionable. In the first place, the overseer, *Perkins,* was found "not guilty," by the jury. Secondly, the other defendants who were found "guilty," were not so found, on account of any acts done by them *under the overseer,* or by his authority. Thirdly, if otherwise, the appointment of the overseer in the second stage, was void; and therefore, it furnished no protection to him, or those acting under him.

2. That the charge of the court in relation to leaving an inventory at the town-clerk's office, was correct. *Stat.* 352. § 8. (ed. 1838.) *Knapp* v. *Lockwood*, 3 *Day*, 131. But whether correct or not, these defendants have not been prejudiced by it, and cannot therefore complain. *Selleck* v. *Sugar Hollow Turnpike Company,* 13 *Conn. R.* 453. *Branch* v. *Doane,* 17 *Conn. R.* 402.

3. That the verdict of the jury was not against the evidence in the cause, but was in conformity to it. In the first

*Windham,*
*July, 1848.*

Clark
*v.*
Whitaker.

place, the property in question was originally the property of the plaintiff. This was shown by all the evidence. Secondly, the defendants who were found guilty, were guilty of a wrongful *conversion* of the property. *H. L. Clark* took possession of all the property on the 13th of *August*, 1844, forcibly and without right. With the same property he kept the *American House,* in his own name, and appropriated the proceeds of it to his own use. He had no interest in the property, and admitted that he had none.

*Amasa C. Hall* advised to the appointment of an overseer. He fraudulently and forcibly assisted in sending the plaintiff to *Worcester*, for the purpose of removing him from the possession of the property. He falsely declared, that he had secured the plaintiff's admission to the hospital; and declared afterwards, that he knew the plaintiff would not be received there, and that the defendants sent him there so that they could get possession of the property. Still later, he declared, that the plaintiff must be kept away until "things were arranged;" and finally, that as "all things were arranged," the plaintiff "might *go to the Devil.*"

*H. Whitaker* assisted in forcibly putting the plaintiff out of possession. He authorized and directed *H. L. Clark* to take possession, and with *Hall* agreed to indemnify him, for so doing. He said there was no way to get their pay, without first getting the plaintiff out. *Whitaker's* mortgages only authorized him to take possession of the property embraced in those mortgages; but the whole property of the plaintiff, including a great variety of valuable articles, not embraced in the mortgages, was taken possession of, by order of *Whitaker* and *Hall*. For the property not included in the mortgages and not accounted for by *Perkins*, but converted by these defendants, the verdict was rendered.

3. That the three defendants were *jointly* concerned in the conversion. They had combined for a common object, and this object was an unlawful one. They have, each and all of them, admitted their connexion with the acts complained of.

4. That a new trial will not be granted, on the ground that the damages are excessive. To authorize the granting of a new trial on this ground, the damages must be manifestly exorbitant, and greatly disproportioned to the injury re-

ceived. *Bodwell* v. *Osgood,* 8 *Pick.* 379. *Worster* v. *Canal Bridge,* 16 *Pick.* 541. *Parks* v. *Boston,* 15 *Pick.* 198. 206, 207. *Stone* v. *Codman, Id.* 297. 300. *Greenfield Bank* v. *Leavitt,* 17 *Pick.* 1. *Weld* v. *Oliver,* 21 *Pick.* 559. *Johnson* v. *Sumner,* 1 *Metc.* 172. *Barnes* v. *Bartlett,* 15 *Pick.* 71. 78. *Sargent* v. *Franklin Ins. Co.,* 8 *Pick.* 90. 100.

Where the damages are to be determined, as mere matter of opinion, the fact that the jury has fixed them at a greater or less sum than any witness, is not ground for a new trial. *Brewer* v. *Tyringham,* 12 *Pick.* 547. 1 *Sw. Dig.* 775. But in truth, the damages found by the jury were reasonable—certainly not excessive.

STORRS, J. Those parts of the charge to the jury to which the present defendants except, involve only the effect of a want of sufficient notice to the plaintiff to appear before the justices, and be heard relative to the appointment of an overseer over him, and of the neglect of such overseer to deposit his inventory in the town clerk's office within the time required by law, so far as the defendant *Perkins* alone, and those who acted under him and by his authority, were concerned. But he, having been acquitted, by the jury, has no occasion to have the verdict disturbed. And the other defendants did not claim to justify their acts, constituting a conversion of the property in question, under him or by his authority, as overseer of the plaintiff; because it appears from the motion, that the only conversion of the property to which the plaintiff adduced proof, and for which he claimed to recover, was conceded to have taken place prior to the appointment of *Perkins* as overseer of the plaintiff; and of that conversion alone the present defendants have been convicted. The charge on these points, therefore, became wholly immaterial as to the present defendants, and they could not be injuriously affected by it. Justice to them, therefore, does not require a new trial, on this ground. *Selleck* v. *Sugar Hollow Turnpike Co.* 13 *Conn. R.* 453. and cases cited. *Branch* v. *Doane,* 17 *Conn. R.* 402.

It has been urged, that the charge of the court on these questions, although applicable only to the defendant *Perkins,* was calculated to produce a prejudice against the present defendants in the minds of the jury. Its natural tendency would

*Windham,*
July, 1848.

Clark
*v.*
Whitaker.

not be to produce that effect ; there is no complaint that the jury were not properly instructed as to the application of the evidence ; and it is not to be presumed, that the jury would, contrary to those instructions, make a wrong application of it. And there is nothing to induce us to believe, that they did so.

It is therefore unnecessary for us to examine the questions of law presented in this motion.

The defendants next claim a new trial, on the ground that the verdict was against the evidence in the cause, in respect, 1. to the question whether there was a conversion of the property : 2. the participation of the defendants, or any of them, in the acts claimed to constitute such conversion : and 3. the amount of damages.

We think that the evidence proved incontestably, that there was a conversion ; and that, with respect to the defendant *Clark,* he was a party to it, and indeed the principal actor in it ; and that it was effected, by his direct personal agency. Indeed, it has not been strenuously insisted, that he was not proved to be guilty, if a conversion was sufficiently shown. Several intelligent and disinterested witnesses, who had the best means of knowledge, their own ocular observation, testified, that he in the absence and without the consent, or even knowledge, of the plaintiff, personally took possession of the house of the plaintiff, which had been, down to that time, kept by him, as a public hotel and boarding-house, and of the barn belonging to it, and of the property in said buildings, of which it was conceded that the plaintiff was the owner, consisting principally of furniture and provisions suitable for such an establishment ; set up and carried on therewith the same business, in his own name and on his own account ; employed clerks and agents for that purpose ; took down the sign of the plaintiff and substituted his own ; used and consumed a portion of the property ; mingled it with similar articles which he had occasion to procure for the concern ; and, in his own name, also sold and disposed of the remainder, and appropriated the avails to his own sole use and benefit ; and, in short, that, during the whole time, he treated the property, in all respects, as if it belonged only to himself. These witnesses, the import of whose testimony, and nearly its very language, has been given, were not only

uncontradicted, but strongly corroborated, as to all the im-portant facts stated by them, and as to several of them, by the admissions of the defendant *Clark* himself. It is hardly necessary to say, that this evidence sufficiently proved a con-version, and by that defendant, of the property.

It may be conceded, for the purposes of this case, as the defendants claim, that the taking of the property of a person, for no other purpose than that of preserving it for his use, is, ordinarily, not such a conversion of it as will subject the taker to an action of trover ; and that in this case, if the plaintiff was incapacitated from managing it, the taking pos-session of it for its preservation, would not amount to a con-version. That principle, however, has no application here ; because, whatever might have been the fact respecting such incapacity, the evidence clearly shows, that it was not taken, by either of the defendants, for such a purpose, but for the use of those of them who were engaged in the taking of it. There was no testimony in support of this claim of the de-fendants, unless it was that of *Balcom*, who stated only, that he supposed that the defendant *Clark* acted by the advice of *Frink*, (who was the overseer of the plaintiff in the second stage,) but he professed to have no knowledge that such was the case ; and *Frink*, who was a witness introduced by the defendants, did not testify that he gave any such advice. This, which was the only evidence on this point, if relevant, was of very little weight.

But, whatever may have been the original design with which the property was taken, the subsequent use and dispo-sition of it amounted clearly to a conversion. No principle is better settled, than that an unlawful taking of goods out of the possession of the owner, is itself a conversion, and not merely evidence of it, provided the taking or detention be with intent to convert them to the use of the taker, or of some other person. *Bul. N. P.* 44. 2 *Wms. Saund.* 47. g. *in notis. Fouldes* v. *Willoughby,* 8 *M. & W.* 540. So the using a thing, without the licence of the owner, and also a wrongful sale of it, is a conversion. *Mulgrave* v. *Ogden, Cro. Eliz.* 219. *Keyworth* v. *Hill,* 3 *B. & A.* 687. (5 *E. C. L.* 422.) *Lord Petre* v. *Heneage,* 12 *Mod.* 520. *Feath-erstonhaugh* v. *Johnston,* 8 *Taun.* 237. *Lovell* v. *Martin,* 4 *Taun.* 799.

With respect to the defendant *Hall*, although it was not shown, that he was personally engaged with the defendant *Clark* in the acts of taking possession and using, consuming and disposing of the property, it was satisfactorily proved, by the testimony of *Wm. Clark*, if it was entitled to credit, that he coöperated with that defendant in those acts, by aiding and abetting him in doing them, and by his subsequent recognition, approval and adoption of them. This witness testified, that *Hall*, in a conversation with him, before the plaintiff went to *Worcester*, advised that he should be sent to the *Insane Retreat* at that place; and in answer to an enquiry by the witness, on the subject, replied, that he had ascertained, by sending to that institution, that the plaintiff would be admitted there; that the plaintiff was accordingly sent there, in charge of one *Root* and another person; that he returned, in the course of the same week;—that in the mean time, possession of his house and personal property was taken, by the defendant *Clark;* that after the plaintiff's return, *Hall* stated to the witness, that his object was, to get the plaintiff away, for the purpose of getting possession of the house and property; and that he knew that the plaintiff would not be received into that institution, when he was sent there; and that while the plaintiff was there, and after possession was taken, by the defendant *Clark*, of the property, *Hall* stated to the witness, that he (*Hall*,) had written to *Root*, that they (*Hall &c.*) had got things arranged, and that he (*Root*) might let the plaintiff "*go to the Devil.*" This witness further testified, that in a subsequent conversation with *Hall*, the latter said, that "he knew he had no legal possession of the property." Other circumstances also, which need not be detailed, supported the claim that *Hall* coöperated with the defendant *Clark*. No argument is necessary to show, that the testimony of this witness, if credible, was abundantly sufficient to prove a combination between them.

The defendants, however, claim, that his testimony was so far impeached and weakened, by his relationship to the plaintiff, and especially, by his statements on his cross-examination, as well as other testimony of conduct and declarations by him, about the time when the alleged conversion took place, inconsistent with his testimony on the trial, that he was not entitled to belief. These were topics affecting his credibility,

which were proper to be presented to the jury, and of which, it is presumed, the defendants availed themselves, to the fullest extent, before them.

There were, however, explanations of those acts and declarations, which were calculated to do away the effect which they would otherwise have in detracting from his testimony. And that particular part of his testimony, which went to prove, that *Hall* was jointly concerned with the defendant *Clark* in the conversion, was, moreover, in a measure corroborated, by the evidence of other witnesses, in regard to his participation in those measures which were taken preparatory to obtaining possession of the property. In view of the whole testimony on this subject, we are of opinion, that the testimony of this witness on this point, was properly credited by the jury.

The testimony adduced to show that the defendant *Whitaker* acted with the other defendants in the conversion of the property, is by no means as satisfactory as that relating to them. That there was evidence, however, conducing to prove, that he coöperated with them, cannot be questioned. There was nothing to show, that he had any active personal agency in the taking of the property, or the subsequent use or disposition of it : but various circumstances were stated, by the witness *Clark*, which tended to evince, that he advised and assisted in the measures which the plaintiff claimed to have proved were taken, for the purpose of enabling the defendant *Clark* to obtain possession of it ; that the acts constituting a conversion of it, were done, at least in part, for his benefit ; and that he subsequently approved and adopted them. Other circumstances were stated, by the same witness, tending to show, that *Hall's* acts in relation to the property, were done with the knowledge and under the direction of *Whitaker*. His declarations also, at various times, among which was one of a very strong and significant character, were testified to, tending to confirm the inference claimed to be derived from these circumstances. This testimony was met, by the defendants, with opposing and explanatory evidence. It was all properly submitted to the jury, whose province it was to determine its credibility and weight. The court are not of opinion, that their verdict is so manifestly wrong, in this respect, that it is our duty to disturb it.

It is not a sufficient ground for a new trial, that the verdict is merely against the preponderance of the testimony; nor that the court might, on an examination of the evidence, have come to a different result from that found by the jury; but it is necessary that the verdict should, in the opinion of the court, be manifestly and palpably erroneous. We cannot say this of the verdict in the present case, because, in our opinion, different persons might reasonably come to a different conclusion from the evidence on which it was rendered. The enquiry, whether there is a combination between individuals to effect a particular purpose, is one which is usually of a complicated character, and it was especially so, in this case. The proof of it consisted partly of declarations, and partly of circumstances, from which inferences were to be drawn and presumptions raised as to the main fact in controversy; the credibility of the plaintiff's principal witness was to be determined; and there was much conflicting testimony on all these points. Without saying that there could not be a case so strong, that, under such circumstances, a new trial should be granted, on the ground that the verdict is against the evidence, we think that this is not one of that description. *Bulkley* v. *Waterman,* 13 *Conn. R.* 328.

The remaining question is, whether the damages given by the jury, were excessive. The rule of damages, in this case, was the value of the property converted, with interest from the time of the conversion. In looking at the evidence in this case, we have a strong general impression, that the damages assessed were too large; but the testimony, as detailed, does not show, with any clearness or precision, either what particular articles were consumed, or otherwise disposed of, by the defendants, or their value. It is not sufficient for the defendants, who seek a new trial for the excessiveness of the damages, merely to raise a doubt whether they are not too large; but it is incumbent on them to show affirmatively and most satisfactorily, that they are so, and to what extent; and for that purpose, to furnish precise and definite proof of the value of the property. This has not been done. We have, therefore, no criterion, by which we can determine whether the damages are excessive, or not; or if they are excessive, at what sum they should have been assessed. We cannot, in the absence of clear evidence to show what they should

have been say, that the jury, in this respect, have manifestly erred.

A new trial is, therefore, not advised.

In this opinion the other Judges concurred.

WAITE, J., thought the damages excessive; but still, as there had been two trials, he would not, for that reason, disturb the verdict.

New trial not to be granted.