JAMES J. REGAN vs. THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Hartford Dist., Oct. T., 1890.  ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

Gen. Statutes, § 3581, provides that when an injury is done to the property of any person by fire from the locomotive engine of any railroad company, without contributory negligence on his part, the company shall be held responsible in damages to the extent of such injury. Where a railroad company was liable under this statute for the destruction of the plaintiff's property, it was held that it could not in any form secure the benefit of the insurance held by him upon the property.
Where the law subrogates one who has discharged the obligation of a third

person, in the place of the person to whom the obligation was due, the obligation must have rested primarily on such third person. Here the duty to pay for the destruction of the plaintiff's property rested primarily on the railroad company.

On a hearing in damages upon a default both parties must be confined to such questions of damage as would naturally arise from the facts stated in the complaint. The railroad company could not, on such a hearing, properly make the question of their right to a reduction or extinguishment of the damages by reason of the insurance received by the plaintiff.

Where a suit is brought for the destruction of property that has a definite money value, susceptible of easy proof, a just indemnity to the plaintiff requires the addition to the value of the property at the time of its destruction, of interest from that time to the date of the judgment.

[Argued November 18th, 1890—decided March 4th, 1891.]

ACTION for the destruction, by fire from the locomotive engine of the defendant company, of goods of the plaintiff in a store-house adjacent to the track of the defendant's railroad; brought to the Superior Court in Tolland County. The defendant suffered a default and the case was heard in damages before *F. B. Hall, J.*

Upon the hearing the counsel for the defendant inquired of the plaintiff, who testified as a witness in his own behalf, if he had not received from insurance companies some compensation for the damage to the goods by the fire. To this inquiry the plaintiff objected, upon the ground that it was immaterial. The court sustained the objection and excluded the question.

The defendant claimed that the rule of damages was the value of the goods at the time of their destruction, without interest. The court overruled this claim, and in assessing damages added to the value of the goods a sum equal to interest thereon at six per cent. from the date of their destruction to the date of the judgment.

The defendant appealed.

*E. D. Robbins*, for the appellant.

The plaintiff had a lot of stock destroyed or damaged by fire. This stock was in a store-house standing alongside the railroad of the defendant. The Superior Court finds that

the fire was communicated to the store-house by a spark from a locomotive engine belonging to the defendant. There was no claim that the defendant was guilty of any negligence or was in any wise at fault. Upon the hearing the counsel for the defendant inquired of the plaintiff, as a witness, if he had not received from insurance companies compensation for the damage to his goods. The plaintiff objected to the question on the ground that it was immaterial. The court sustained the objection and excluded the testimony. It is submitted that in so doing the court erred. The liability of the railroad company is deduced solely from section 3581 of the General Statutes. Under that statute it is liable in damages only " to the extent of the injury to the person injured." If the plaintiff in this case has been paid all his loss by insurance companies he has not been injured at all. It is therefore most material to know whether he has in fact been so paid or not.

As this question arises on our statute, decisions in other states could be of no pertinency or weight. The question has never arisen before in this state. It must, therefore, be decided on principle and the language of the statute. Certainly there are no equities which call for the stretching of the statute in the plaintiff's favor. The fire was a pure accident, and the ensuing loss was due to an extraordinary conjunction of circumstances. It is a harsh rule of law which makes a railroad company liable in such a case. To hold the defendant liable to the plaintiff on such a statute for $13,091, when he has in fact incurred no loss at all, would be a refinement of injustice.

The reason given by the plaintiff's counsel, arguing in the court below, for holding this evidence immaterial, was that one purpose of the statute was to enable owners of property adjoining a railroad to obtain insurance without having to pay larger rates because of the consequent additional risk. Whether this was part of the intent of the statute I do not care to inquire. The statute will, in fact, evidently enable any property-owner to avoid such a raising of rates if ever attempted. If any insurance company were disposed to regard

the vicinity of a building to a railroad as a reason for raising rates of premium, it would be perfectly easy to stipulate that this risk should be excepted, and that if, in a suit between the property-owner and the insurance company, it should appear that the railroad company set the fire, then the insurance company would be released from its liability and would be entitled to receive back the amount paid the person insured.

Rules of law which might apply for the benefit of an insurance company against a wrong-doer whose wrong has caused the fire, have no bearing on the case at bar. This statute was intended as between property-owner and railroad company, to lay the damage of a fire starting from a locomotive engine on the railroad company rather than the property-owner. It is an entirely gratuitous assumption to suppose that its intent was to protect insurance companies. Here is a loss that must fall on some one. Both the railroad company and the property-owner are innocent of any fault. As between these innocent parties, it has seemed best to the legislature to throw the loss on the railroad company. The insurance company, however, has no such standing ground against the parties to the suit. Its business is to assume fire risks. It has very likely in the course of years been paid a large sum of money for insuring the plaintiff's stock. There is no reason why the statute should be strained to protect its interests and save it harmless from loss by a fire against which it had for a valuable consideration insured the plaintiff.

The liability of the defendant is not a natural primary liability like that of a tort-feasor. Suppose the plaintiff had omitted to give the defendant the notice required by the other sections of this statute, the insurance company would then clearly have to pay the loss and would have no legal ground of complaint against the plaintiff. The able reasoning of the court in *Harding* v. *Town of Townsend*, 43 Verm., 538, brings out the distinction between such cases as that and the case at bar. The court says: " As between the insurer and wrong-doer, in reason and justice the burden of

making compensation to the injured party ought to be ulti-
mately borne by the party thus in fault. The party whose
wrongful act or culpable negligence caused the injury ought
to make compensation and bear the loss." In the present
case, in reason and justice the defendant, being innocent of
negligence or any wrong-doing, ought not to bear the loss
when the issue lies between it and an insurance company
which had been paid to assume the risk.

*A. P. Hyde* and *C. Phelps*, for the appellee.

LOOMIS, J. This is a complaint to recover damages for
the loss of goods belonging to the plaintiff, which on the
13th day of July, 1889, were destroyed by a fire communi-
cated by a locomotive engine belonging to and in the use of
the defendant corporation.

The action is predicated upon section 3581 of the General
Statutes, which provides as follows:—" When any injury
is done to a building or other property of any person, by fire
communicated by a locomotive engine of any railroad com-
pany, without contributory negligence on the part of the
person entitled to the care and possession of the property
injured, the said railroad company shall be held responsible
in damages to the extent of such injury to the person so
injured; and every railroad company shall have an insura-
ble interest in the property for which it may be so held
responsible in damages along its route, and may procure in-
surance thereon in its own behalf." The defendant suffered
a default and a hearing in damages was had before the court.

The court found all the facts essential to a recovery of
compensatory damages, and assessed as such damages the
sum of thirteen thousand and ninety-one dollars and ninety-
five cents, and rendered judgment for the plaintiff to recover
that sum of the defendant, and his cost.

Upon the hearing the counsel for the defendant inquired
of the plaintiff as a witness, if he had not received from in-
surance companies some compensation for the damages to

said goods by said fire.   This was objected to by the plaintiff and excluded by the court.   Was this ruling erroneous?

In the first place, if we assume that under proper pleadings the defendant might be allowed a reduction equal to the amount of insurance collected by the plaintiff on the goods destroyed, we do not think it admissible as the pleadings were at the time of the hearing.

It is true that in this case there was no answer, but a default, which admitted the allegations of the declaration to be true; but an admission of the truth of the allegations could surely give no greater latitude of proof upon the subject of the damages than a denial.   Both parties must be confined to such questions of damage and such matters of aggravation or mitigation as would naturally arise from the facts stated in the complaint.   The plaintiff could not show special or consequential damages not averred and not naturally flowing from the cause of action described, nor could the defendant on the other hand have the benefit of a set-off, recoupment, or any other ground for the reduction of damages, depending on some independent transaction between the plaintiff and a third person.

The matter to be proved by the rejected evidence upon the defendant's assumption would be a complete defense except for the default.   If it equaled in amount the value of the goods it would be an absolute bar to the action, otherwise it would be a bar *pro tanto*.

But irrespective of the pleadings, the ruling complained of was clearly right upon the merits of the question.   Any other conclusion would seem to us utterly at variance with established principles and sound reason, and contrary to an unbroken line of decisions by the courts of England and the United States.

If the defendant is entitled to have the insurance money deducted from the amount otherwise due, it must be because it owns or has some legal claim to the money.   How happens it that the defendant corporation is entitled to this money?   Not because it ever paid the premium or any part of it, nor because the policy was obtained for its benefit or

upon its request, nor because there is any privity between it and the insurance company. Our own court in *Conn. Mutual Life Insurance Co.* v. *N. York, N. Haven & Hartford R. R. Co.*, 25 Conn., 265, held that there was no privity between the defendant whose negligence caused the death of the insured, and the insurance company who issued the policy on the life of such person, and this position accords perfectly with the law in other jurisdictions.

The defendant, instead of paying anything toward procuring the policy, by its extraordinary use of the dangerous element of fire in close proximity to the plaintiff's property, rendered it necessary for him to pay a much larger sum to obtain his insurance than would otherwise have been required.

How then can the defendant claim, as it does, the exclusive benefit of the insurance? It came to the plaintiff from a collateral source, wholly independent of the defendant, and which as to him was "*res inter alios acta.*" The defendant, in our judgment, has no more claim to the insurance money than it would have to money obtained upon a subscription paper which the friends of Regan may have procured to make good his loss. How can the defendant make any distinction between money raised voluntarily after the loss, and that obtained from a contract of indemnity to which it was no party, and had paid no part of the consideration?

The statute upon which the action is founded justly imposes an absolute primary liability on the defendant for having caused the loss. But the ruling which the defandant asked for would completely nullify the statute as applicable to such a case as this, by practically imposing the primary obligation on the insurer, who is innocent, and allowing the defendant, who caused the loss and who alone could have prevented it, to go entirely free, at least to the extent of the insurance; for the insurer, having paid the money due the insured, could not get it back from him, and of course the insured, after such deduction from his damages, would have no remaining right to which the insurer could be subrogated to recover the money back again from the defendant.

If the principles that underlie the defendant's position are correct, had the loss been paid in full in ignorance of the fact that the plaintiff had obtained insurance, the defendant might bring a suit against the plaintiff to recover the money so paid; or had the money due on the policy not been paid, the defendant, after paying the loss in full, could intervene to prevent the amount due on the policy from being paid to the insured or any other than itself. What a strange subrogation that would be, to put the party who caused the loss in the place of the insured to enforce the contract between the latter and his insurer! And what a strange revolution would be made in the relation of the parties were we to adopt the defendant's contention! It has hitherto been established by a line of decisions reaching backward more than a century and substantially unbroken by dissent, that there is no privity in such cases between one made primarily liable for such a loss and an insurance company; that the liability of the insurer is merely secondary; that the insurer's position is practically that of a surety; that insurance is personal and does not inure to the benefit of one not a party thereto; and that where the insurer has indemnified the owner of the goods lost, he is entitled to be subrogated to all the means of indemnity which the owner held against the party causing the loss and primarily liable therefor.

The true relations of the parties and the law on the subject under discussion are very clearly shown by the opinion of the court delivered by Chief Justice SHAW in the case of *Hart* v. *Western Railroad Corporation*, 13 Met., 99, which was an action on a statute identical with our own in that it provided that when any injury was done to a building of any person by fire communicated by a locomotive engine of a railroad corporation, the corporation should be responsible in damages to the person so injured, and such liability, as in the case of our statute, was irrespective of any actual proof of negligence. The plaintiff's house was destroyed by a fire communicated by a locomotive engine of the defendants, and the underwriters paid to the owner of the house

the amount of his loss, and it was held that such payment did not bar the owner's right to recover of the railroad corporation, and that the owner, by receiving payment of the underwriters, became trustee for them, and they could prosecute the suit against the railroad corporation in the name of the owner, who could not even release the railroad corporation so as to affect the rights of the underwriters to recover. In delivering the opinion Chief Justice SHAW said :—" Railroad companies acquire large profits by their business. But their business is of such a nature as necessarily to expose the property of others to danger. * * * The manifest intent and design of this statute, we think, and its legal effect, are, upon the considerations stated, to afford some indemnity against this risk to those who are exposed to it, and to throw the responsibility upon those who are thus authorized to use a somewhat dangerous apparatus, and who realize a profit from it. * * * Now, when the owner, who *primâ facie* stands to the whole risk and suffers the whole loss, has engaged another person to be at that particular risk for him, in whole or in part, the owner and the insurer are, in respect to that ownership and the risk incident to it, in effect one person, having together the beneficial right to an indemnity provided by law for those who sustain a loss by that particular cause. If, therefore, the owner demands and receives payment of that very loss from the insurer, as he may by virtue of his contract, there is a manifest equity in transferring the right to indemnity, which he holds for the common benefit, to the assurer. It is one and the same loss for which he has a claim of indemnity, and he can equitably receive but one satisfaction. So that, if the assured first applies to the railroad company, and receives the damages provided, it diminishes his loss *pro tanto*, by a deduction from, and growing out of, a legal provision attached to and intrinsic in the subject insured. The liability of the railroad company is, in legal effect, first and principal, and that of the insurer secondary; not in order of time, but in order of ultimate liability. The assured may first apply to whichever of these parties he pleases; to the railroad company

by his right at law, or to the insurance company in virtue of his contract. But if he first applies to the railroad company, who pay him, he thereby diminishes his loss, by the application of a sum arising out of the subject of the insurance, to wit, the building insured, and his claim is for the balance. And it follows, as a necessary consequence, that if he first applies to the insurer, and receives the whole loss, he holds the claim against the railroad company in trust for the insurers. Where such an equity exists the party holding the legal right is conscientiously bound to make an assignment in equity to the person entitled to the benefit; and if he fails to do so, the *cestui que trust* may sue in the name of the trustee, and his equitable interest will be protected. We think this position is exceedingly well sustained by authorities."

And if the principles were so well sustained then, in 1847, when that opinion was written, they are now, after the lapse of more than forty years, still more strongly supported. *Mason* v. *Sainsbury*, 3 Doug., 61; *Clark* v. *Hundred of Blything*, 3 Dowl. & Ryl., 489; *S. C.*, 2 Barn. & Cress., 254; *Yates* v. *White*, 4 Bing. N. C., 272; *Randal* v. *Cochran*, 1 Ves. Sen., 98; *Commercial Union Assurance Co.* v. *Lister*, L. R. 9 Ch. App., 483; *Propeller Monticello* v. *Mollison*, 17 How., 152; *Hall & Long* v. *Railroad Cos.*, 13 Wall., 367; *Clark* v. *Wilson*, 103 Mass., 219; *Hayward* v. *Cain*, 105 id., 213; *Harding* v. *Town of Townshend*, 43 Verm., 536; *Monmouth Co. Fire Ins. Co.* v. *Hutchinson*, 21 N. Jer. Eq., 107; *Weber* v. *Morris & Essex R. R. Co.*, 35 N. Jer. Law, 409; *Same* v. *Same*, 36 id., 213; *Collins* v. *N. York Central R. R. Co.*, 5 Hun, 503; *Conn. Fire Ins. Co.* v. *Erie Railway Co.*, 10 id., 59; *Merrick* v. *Brainard*, 38 Barb., 574; *Althorf* v. *Wolf*, 22 N. York, 355; *Merrick* v. *Van Santvoord*, 34 id., 208; *Carpenter* v. *Eastern Transportation Co.*, 71 id., 574: *Briggs* v. *N. York Central R. R. Co.*, 72 id., 26; *Gales* v. *Hailman*, 11 Penn. St., 515; *Rockingham Ins. Co.* v. *Bosher*, 39 Maine, 253; *Disbrow* v. *Jones*, Harr. (Mich.), 48; *Sherlock* v. *Alling*, 44 Ind., 184; *Swarthout* v. *Chicago & N. W.*

*R. R. Co.*, 49 Wis., 625; *Pratt* v. *Radford*, 52 id., 114; *Honore* v. *Lamar Ins. Co.*, 51 Ill., 414.

In 1 Sutherland on Damages, p. 242, it is said :—" There can be no abatement of damages on the principle of partial compensation received for the injury, where it comes from a collateral source, wholly independent of the defendant, and is as to him *res inter alios acta.* A man who was working for a salary was injured on a railroad by the negligence of the carrier; the fact that the employer did not stop the salary of the injured party during the time he was disabled was held not available to the defendant sued for such injury in mitigation. Nor will proof of money paid to the injured party by an insurer or other third person, by reason of the loss or injury, be admissible to reduce damages in favor of the party by whose fault such injury was done. The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom in mitigation of damages for which he is liable. As has been said by another, to permit a reduction of damages on such agreement would be to allow the wrongdoer to pay nothing, and take all the benefit of a policy of insurance without paying the premium." The same thing in substance is said in Wood's Mayne on Damages, p. 155, § 114.

In the above quotation the doctrine of the cases cited is well summarized and we forbear further citations from the opinions in those cases, except such as bear directly upon the particular point which the defendant makes in this case; for the counsel for the defendant admits the general doctrine as applied to cases where the defendant caused the loss by negligence or some positive wrongful act; but his contention is that, under our statute, the railroad company and the insurance company are equally innocent in regard to the loss, and therefore the insurance company did not acquire by payment of the amount insured any right of subrogation as against the defendant corporation. But we think this is an entire misconception of the defendant's true position and of the law relative to this subject.

In the first place, the defendant cannot in the present posture of this case say that the loss in question was not occasioned by its own negligence. It is explicitly found that there was no negligence on the part of the plaintiff, but it is not found that there was no negligence on the part of the defendant. In some cases the omission to find negligence would justify the claim that there was no negligence, but this cannot apply to such a case as this, where by law the presumption of negligence arises from the mere fact that the defendant caused the loss. In such cases the burden rests on the defendant to overcome the presumption by showing to the satisfaction of the court that there was no negligence. Section 1096 of the General Statutes provides that " in all actions to recover for any injury occasioned by fire communicated by any railway locomotive engine in this state, the fact that such fire was so communicated shall be *primâ facie* evidence of negligence on the part of the person or corporation who shall, at the time of such injury by fire, be in the use and occupation of such railroad."

It may be said that in the other section of the statutes, upon which the present action is particularly predicated, the railroad company causing the loss is made liable irrespective of any finding of negligence, and as such fact was immaterial the defendant ought not to be prejudiced by failing to show that there was no negligence. If however the defendant's present contention is correct, that the amount of the damages depends upon the fact of negligence or no negligence, then it is material to the question under consideration, and the defendant must rest under the statutory presumption that the loss was caused by negligence.

But there are other still more satisfactory answers to the objection under consideration. The sole foundation for the defendant's contention rests on the fact that the railroad company and the insurance company, in their relation to the loss, are equally innocent in contemplation of the law. Now any proper theory of the statute under consideration will utterly exclude such an idea. The theory of the statute is, that as the railroad corporation is privileged, for its

own profit, to use for purposes of rapid locomotion the dangerous element of fire in close proximity to adjoining combustible property, and as it alone, through its own agents, who construct and manage its locomotive engines, has power to prevent the communication of fire to the adjoining property, if fire is communicated from its engines and the property of another is thereby destroyed there is legal fault, predicated upon the mere fact of a loss so caused, and the railroad corporation is made absolutely liable to make good the loss to the owner irrespective of any finding as to negligence. In view of this statute it seems to us almost preposterous to hold that the defendant who causes the loss is equally innocent with the one who merely issues to the owner of the property an ordinary policy of insurance.

But there is still another independent answer to the point referred to, namely, that the principles established by the authorities render it immaterial whether or not the loss was occasioned by any positively negligent or wrongful act. This is shown, first, by the leading English cases, where the doctrine which we apply to this case originated, and which cases are referred to and cited with approval in all the leading American cases on the subject.

The earliest case on this subject is that of *Mason* v. *Sainsbury*, 3 Doug., 61, decided in 1782. It was an action against the community known in England as the hundred—a division of a county—to recover damages sustained by the demolition of a house by the act of certain rioters in 1780. The plaintiff had an insurance on the house destroyed which the insurance company (or office as it is there called), paid without suit, and this action was brought in the name of the plaintiff, with his consent, for the benefit of the insurance company. The judges all agreed that the plaintiff was entitled to recover. Lord MANSFIELD said:—" The office paid without suit, not in ease of the hundred and not as co-obligors, but without prejudice. It is to all intents and purposes as if it had not been paid. The question then comes to this—can the owner, having insured, sue the hundred? Who is *first* liable? If the hundred, it makes no

difference; if the insurer, then it is a satisfaction, and the hundred is not liable. But the contrary is evident from the nature of the contract of insurance. It is an indemnity. Every day the insurer is put in the place of the insured. In every abandonment it is so. The insurer uses the name of the insured. The case is clear, the act puts the hundred, for civil purposes, in the place of the trespassers; and upon principles of policy, as in the case of other remedies against the hundred; and I am satisfied that it is to be considered as if the insurers had not paid a farthing." BULLER, J., said it was to be treated as an indemnity, in which the principle is that the insurer and the insured are as one person, and the paying by the insurer, before or after, can make no difference.

In *Clark* v. *The Inhabitants of the Hundred of Blything*, 3 Dowling & Ryland, 489, decided in 1823, it was held that the owner of stacks of corn maliciously destroyed by fire set by some persons unknown, may maintain an action against the hundred on the act of 9 Geo. 1, ch. 22, although he has previously received the full amount of his loss from an insurance office. ABBOTT, C. J., in delivering the opinion, said he could not entertain a doubt as to the propriety of the decision in *Mason* v. *Sainsbury*, and added :—" The intention of the legislature in passing this and other statutes of the same nature was two-fold:—to render the inhabitants of hundreds vigilant for their own sake, as well as that of the public, by making them interested in the prevention of offenses, and where that is impossible, in the apprehension and conviction of offenders. * * * With respect to the question whether it is competent for the defendants to set up in their own defense a contract made between third persons, it seems to me that the principle of the act fully justifies the decision of the former case, and that we should be acting in violation of the principle if we were to disturb the present verdict."

The analogy between the cases just cited and the one at bar, particularly as they stand related to the question under consideration, would seem to be nearly perfect. By sundry

statutes passed by Parliament at different times, the particular community known in England as the hundred was made liable, in the cases specified, to make good the loss sustained by individuals within the hundred by robbery, riot and other violent crimes committed within their jurisdiction. The community might be ever so vigilant to prevent, discover and punish crime, and might leave nothing whatever undone which it was their legal or moral duty to do, and yet they would be liable just the same as if actual culpability were proved. The only distinction that can be made between these cases and the one at bar will render them still stronger as authorities against the position of the defendant, for it is manifest that the hundred had far less power in fact to prevent the commission of the crimes referred to and the losses therefrom, than a railroad corporation with us has to prevent the communication of fire to adjoining property, and yet the statutes referred to imputed to the hundred, upon the mere happening of loss from the commission of the crimes referred to, a legal fault or wrong which made them absolutely liable to make good the loss. So our statute conclusively fixes a legal fault or wrong upon a railroad corporation that fails to so construct and manage its locomotive engines as absolutely to prevent loss of property of another, from fire communicated by it in the way and manner specified, and makes it primarily liable to make good the loss.

The statutes in the case of the hundred were designed to make the inhabitants vigilant to prevent and punish crime. So one purpose of our statute was to make railroad corporations more careful and vigilant to prevent loss from fire; but another, and perhaps more controlling purpose, was to place the loss, should it happen, where justice required it to be placed, namely, on the one who caused the loss, while exercising the privilege and making a profit out of the hazard which it thereby imposed as a burden on the adjoining property, and this furnishes most ample vindication of our statute, whatever we may think of the statutes concerning the hundred.

In further contravention of the defendant's position we might cite all those cases where the doctrine under consideration was applied to carriers, who are by law made absolutely responsible for the safe delivery of goods entrusted to them, with the single exception of losses arising from the act of God, irrespective of any negligence or positively wrongful act. The principle of these cases is stated and approved in Sheldon on Subrogation, § 229.

We will cite two of this class of cases, where the precise point now made was raised and decided adversely to the defendant by courts of as great ability as any in the United States. The first case is that of *Hall & Long* v. *The Railroad Companies*, 13 Wallace, 367.

The head note is as follows:—" An insurer of goods consumed and totally destroyed by *accidental fire* in course of transportation by a common carrier, is entitled, after he has paid the loss, to recover what he has paid by suit in the name of the assured against the carrier. It is not necessary, in order to sustain such a suit, to show *any positive wrongful act* by the carrier." Mr. Justice STRONG, in delivering the opinion of the court, said:—" It is too well settled by the authorities to admit of a question, that, as between a common carrier of goods and an underwriter upon them, the liability to the owner for their loss or destruction is primarily upon the carrier, while the liability of the insurer is only secondary. The contract of the carrier may not be first in order of time, but it is first and principal in ultimate liability. In respect to the ownership of the goods, and the risk incident thereto, the owner and the insurer are considered but one person, having together the beneficial right to the indemnity due from the carrier for a breach of his contract or for non-performance of his legal duty. Standing thus as the insurer does, practically, in the position of a surety, stipulating that the goods shall not be lost or injured in consequence of the peril insured against, whenever he has indemnified the owner for the loss he is entitled to all the means of indemnity which the satisfied owner held against the party primarily liable. His right rests upon

familiar principles of equity." Then, after citing several pertinent cases, the opinion proceeds:—"It has been argued, however, that these decisions rest upon the doctrine that a wrong-doer is to be punished; that the defendants against whom such actions have been maintained were wrong-doers; but that in the present case the fire, by which the insured goods were destroyed, was accidental, without fault of the defendants, and therefore they stood, in relation to the owner, at most in the position of double insurers. The argument will not bear examination. A carrier is not an insurer, though often loosely so called. The extent of his responsibility may be equal to that of an insurer, and even greater, but its nature is not the same. His contract is not one for indemnity, independent of the care and custody of the goods. * * * In all cases, when liable at all, it is because he is proved, or presumed to be, the *author* of the *loss*."

The case of *Gales* v. *Hailman*, 11 Penn. St., 515, is equally in point. In a very able opinion by GIBSON, C. J., it was held that "a shipper, who has received from his insurers the part of the loss insured against, may sue the carrier on the contract of bailment, not only in his own right for the unpaid balance due to himself, but as trustee for what has been paid by the insurer, and upon the trial the court will restrain the carrier from setting up the insurer's payment of his part of the loss, as satisfaction for so much of the demand at law. The carrier cannot, in case of his own liability, call upon the insurer for contribution upon the principle of double insurance; for the carrier is not an insurer, though he is sometimes inadvertently called so."

The only case cited by the counsel for the defendant in support of his contention is *Harding* v. *Town of Townsend*, 43 Verm., 536; but we regard the case as strongly against him. It was an action against a town for damages occasioned by a defective highway, and it was held that the defendant was not entitled to have deducted the amount received by the plaintiff from an insurance company on account of the injuries for which he claimed to recover against the town; which would seem to be precisely the

point now under consideration. The principles upon which the decision was made to rest are equally in point. They are given in the first part of the opinion of the court delivered by PECK, J., who says: "There is no technical ground which necessarily leads to the conclusion that the money received by the plaintiff of the accident insurance company should operate as a defense or enure to the benefit of the defendant. The insurer and the defendant are not joint tort-feasors or joint debtors, so as to make a payment or satisfaction by the former operate to the benefit of the latter. Nor is there any legal privity between the defendant and the insurer so as to give the former a right to avail itself of a payment by the latter. The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff and at his expense, and to the procurement of it the defendant was in no way contributory. It is in the nature of a wager between the plaintiff and a third person, the insurer, to which the defendant was in no measure privy, either by relation of the parties or by contract or otherwise. It cannot be said that the plaintiff took out the policy in the interest or behalf of the defendant, nor is there any legal principle which seems to require that it be ultimately appropriated to the defendant's use and benefit." These are the principles that controlled the case and must equally control the one at bar. But the opinion proceeds to answer objections on the part of the defense, and in the course of the discussion it is shown that the defendant as a wrong-doer is in no position to make such objections. These expressions were seized upon as the turning point of the case, when in our judgment they were not so intended at all. The opinion continues as follows: "But it is urged on the part of the defense that the plaintiff is entitled to but one satisfaction. If we assume this to be a correct proposition, the question arises whether the defendant stands in a condition to make this objection. This depends on the question who, as between the insurer and the defendant, ought to pay the damage—which of the two ought primarily to make compensation to the plaintiff and ultimately to bear

the loss?" Then, after referring to the obligation of the town to keep its highways in good repair, it is added: "The defendant is found liable in consequence of the breach of this duty. The defendant town, therefore, *in respect to the injury* the plaintiff has sustained, is the wrong-doer; and whether by *some positive, affirmative act*, or by culpable negligence, does not vary the principle applicable to the case."

Although it was very natural, in answering the particular objection of the defendant, to call the town a wrong-doer and to argue the matter upon that basis, yet the above extract makes it obvious that the court did not intend by wrong-doer one necessarily guilty of positive negligence. This view is materially strengthened by what follows, where it is said—"In principle the question involved in this case has been settled in *analogous cases;*" citing *Mason* v. *Sainsbury, supra*, and *Clark* v. *Blything, supra*, where, as we have seen, there was no actual wrong, but only a statutory one, as in the case at bar.

In commenting on the case of *Harding* v. *Town of Townsend*, counsel for the defendant seemed to assume that to entitle the insurance company to be substituted in the place of the plaintiff, it must appear that the defendant was guilty of negligence or some positive wrongful act. Such however is not the true doctrine, but it is this: "Where one person discharges an obligation which *primarily* rests upon another, he shall be subrogated to the place of the injured party or the creditor, in respect to the party who is *primarily* liable, *Conn. Ins. Co.* v. *Erie R. R. Co.*, 10 Hun, 59; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend., 397; Wood on Fire Insurance, 793, note 1.

One other point made on the trial has been assigned for error, although it was not noticed in the argument for the defendant. The defendant claimed that the rule of damages was the value of the goods at the time of their destruction, without interest, but the court allowed interest from the date of the injury to the date of judgment. It has been sometimes said that interest is not to be allowed on unliquidated demands. There are actions, such for instance as

assault and battery or slander, to which the rule is applicable. But where the demand is for property that has a market value susceptible of easy proof, there is no propriety in such a rule. A loss of property having a definite money value is practically the same as the loss of so much money; the loss of the use of the property is practically the same as the loss of the use (or interest) of so much money. We think therefore a just indemnity to the plaintiff required the addition to the value of the goods at the time of their destruction, of the interest from that time to the date of judgment. This court has already applied such a rule to actions of trover for the conversion of goods, as in *Clark* v. *Whitaker*, 19 Conn., 319, and *Cook* v. *Loomis*, 26 Conn., 483, and to the action of trespass for taking personal property, as in the case of *Oviatt* v. *Pond*, 29 Conn., 479.

There was no error in the judgment complained of.

In this opinion the other judges concurred.