RAYMOND HASSETT *v.* CITY OF NEW HAVEN ET AL.*

Superior Court, Judicial District of New Haven
File No. CV-02-0458974S

Memorandum filed August 25, 2004

* Affirmed. *Hassett* v. *New Haven,* 91 Conn. App. 245, 880 A.2d 975 (2005).

*Lasala, Walsh, Wicklow & Velardi,* for the plaintiff.

*Corporation counsel of the city of New Haven,* for the named defendant.

*Bai, Pollock, Blueweiss & Mulcahey,* for the defendant Progressive Casualty Insurance Company et al.

BLUE, J. This uninsured motorists action against the defendant city of New Haven (city) and its insurers has been tried to the court. Although the case involves modest amounts of money, it raises important issues involving our "collateral sources" statute, General Statutes § 52-225b.

The city stipulated to liability at the outset of the trial, so the trial was, for all practical purposes, a hearing in damages. The trial was on the first count of the amended complaint only. (The first count claims the liability of the city; the second count, severed for purposes of trial, claims the liability of another defendant.) There is no dispute concerning the underlying facts. The parties' differences boil down to a factual dispute over the amount of noneconomic damages and a legal dispute as to whether the plaintiff's medical, wage and overtime benefits are "collateral sources" within the meaning of § 52-225b. These issues will be addressed following a brief recitation of the undisputed facts.

The plaintiff, Raymond Hassett, is a lieutenant in the New Haven police department. On May 19, 2000, while on duty, his police vehicle was struck by a negligent uninsured motorist. Hassett was disabled for three weeks and underwent physical therapy for approximately two and one-half months, eventually making a full recovery. He commenced this action against the city by service of process in 2001. The case was tried to the court on July 28, 2004, and argued, following the submission of posttrial briefs, on August 23, 2004.

The parties stipulated at trial that Hassett's economic damages were $8395.66, consisting of $4130.50 in medical expenses and $4265.16 in lost wages and overtime. After considering all of the evidence, the court determines that Hassett suffered noneconomic damages in the amount of $6000. His total damages, prior to the deduction of collateral sources, are thus $14,395.66.

The parties additionally stipulated that as a result of the benefits available through his employment, Hassett received $3009.03 in reimbursement of his medical expenses and $3300.99 in reimbursement of his lost wages and overtime benefits. It is additionally uncontested that Hassett's medical expenses in excess of $3009.03 were forgiven by his health care providers following the receipt of that payment.

Hassett concedes that "[m]edical bills paid, and not incurred and/or forgiven, should be deducted as a collateral source." There is, consequently, no dispute that the $3009.03 that Hassett received in reimbursement of his medical expenses should be treated as a collateral source. The dispute between the parties focuses on the difference between this sum and the $4130.50 that forms part of the economic damages stipulated by the parties. As mentioned, the difference between these sums was ultimately forgiven by the medical care providers. The city contends that these additional medical bills, subsequently forgiven, should also be deducted as collateral sources. Hassett disputes this claim.

This dispute is resolved by the statutory text. Section 52-225b provides: "For purposes of [General Statutes §§] 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claim-

ant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. 'Collateral sources' do not include amounts received by a claimant as a settlement."

It can be assumed, for purposes of argument, that the subsequent forgiveness of a debt by a medical care provider qualifies as a "[payment] made to the claimant, or on his behalf." " 'Payment' is not a talismanic word. It may have many meanings depending on the sense and context in which it is used." *United States* v. *Consolidated Edison Co.*, 366 U.S. 380, 391, 81 S. Ct. 1326, 6 L. Ed. 2d 356 (1961). In economic terms, at least, the forgiveness of a debt is as much a payment as a transfer of money. The problem with the city's argument that a "payment" of this description is a "collateral source" is that it is not made "by or pursuant to" either (1) "[a]ny . . . insurance" or (2) "any contract or agreement" within the meaning of § 52-225b. Rather, as far as the record reflects, the forgiveness here was the voluntary act of the medical care providers themselves. Under these circumstances, the subsequently forgiven debts are not collateral sources under the statute, and the collateral source medical care deduction is limited to $3009.03.

The city's contention concerning the amount of $3300.99 paid to reimburse Hassett's lost wage and overtime benefits raises a more complex set of issues. The city's argument, as I understand it, is not that this amount should be deducted from Hassett's economic damages as a collateral source but that it should not be included in Hassett's economic damages in the first place. This argument, first advanced in the city's post-trial brief, cannot be reconciled with the city's stipulation at trial that Hassett's "economic damages" included

$4265.16 in lost wages and overtime. Even if this inconsistency is overlooked, however, the city's argument cannot succeed.

The city's argument goes as follows. General Statutes § 52-572h (a) (1) defines "economic damages" as "compensation determined by the trier of fact for pecuniary losses including . . . loss of earnings . . . ." In the city's view, when an amount is paid to reimburse a loss of earnings, there is no "loss of earnings" in the first place. According to this argument, the question of collateral sources does not arise because there is nothing from which collateral sources may be deducted in the first place.

The initial problem with the city's argument is that § 52-572h was never intended to alter the law in the direction that the city suggests. "[T]he sole intent of the legislature" in enacting this provision "was to modify the doctrine of contributory negligence to allow diminished recovery based on the degree of a plaintiff's own negligence." *Gomeau* v. *Forrest*, 176 Conn. 523, 526, 409 A.2d 1006 (1979). "Economic damages" is simply a modern term for the category of damages traditionally referred to as special damages. *Childs* v. *Bainer*, 235 Conn. 107, 123, 663 A.2d 398 (1995) (*Berdon, J.,* dissenting). Prior to reductions mandated by § 52-572h itself (none of which are claimed to be appropriate here), "economic damages" are to be calculated just as special damages were calculated under the common law.

In policy terms, the city's approach oversimplifies the necessary analysis, perceiving only one question—what is the plaintiff's net loss?—where the law instead poses two different questions. The correct analysis, succinctly stated by a leading English jurist considering this common jurisprudential problem, is as follows: "Two questions . . . arise. First, what did the plaintiff lose

as a result of the accident? What are the sums which he would have received but for the accident but which by reason of the accident he can no longer get? And secondly, what are the sums which he did in fact receive as a result of the accident but which he would not have received if there had been no accident? And then the question arises whether the latter sums must be deducted from the former in assessing the damages." *Parry* v. *Cleaver*, [1970] 1 App. Cas. 13 (H.L. 1969) (opinion of Lord Reid).

Connecticut courts have traditionally employed the same two step approach, by initially calculating the amount of total damages and then determining whether the reimbursement in question should be "deducted from the amount otherwise due . . . ." *Regan* v. *New York & New England R. R. Co.*, 60 Conn. 124, 129, 22 A. 503 (1891). At common law, a defendant was "not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment comes from a collateral source, wholly independent of him." *Lashin* v. *Corcoran*, 146 Conn. 512, 515, 152 A.2d 639 (1959). The legislature enacted § 52-225a et seq., "in derogation of the common-law collateral source rule." *Jones* v. *Kramer*, 267 Conn. 336, 348, 838 A.2d 170 (2004). A court is now obliged initially to calculate the amount of the plaintiff's total damages proximately caused by the tortfeasor and then deduct the appropriate amount of "collateral sources" as that term is defined by § 52-225b. This calculation is appropriate not only in common-law personal injury actions, but also in the determination of damages in uninsured motorist actions. *Smith* v. *Safeco Ins. Co. of America*, 225 Conn. 566, 574, 624 A.2d 892 (1993).

The legislative history of § 52-225b makes it clear that amounts paid by employers pursuant to wage continuation plans are not to be treated as "collateral sources."

The bill originally drafted to enact the statute now codified at § 52-225b was reported by the joint standing committee on the judiciary on May 8, 1985. The original bill provided: " 'Collateral sources' " means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health, sickness, or income disability insurance, automobile accident insurance that provides health benefits or income disability coverage, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services; (3) any contractual or voluntary wage continuation plan provided by employers or any other system intended to provide wages during a period of disability." House Bill No. 5364, § 2 (a), January Sess., 1985.

On May 29, 1985, the House amended the original bill by passing House amendment schedule "B." Schedule "B" deleted the references to "income disability insurance" in proposed clause (1) and, more importantly for present purposes, deleted proposed clause (3) in its entirety. Conn. House Journal, May 29, 1985, p. 2095. The bill, thus amended, was subsequently enacted. Public Acts 1985, No. 85-574. The current text of the statute is quoted previously in this memorandum of decision.

The adoption of House amendment schedule "B" is clear evidence that the legislature intended to change the provisions of the original bill. See 2A J. Sutherland, Statutory Construction (6th Ed. Singer 2000) § 48:18, pp. 484–85. Judicial treatment of amounts paid pursuant to wage continuation plans as collateral sources would be wholly inconsistent with the legislature's action in passing House amendment schedule "B." Under these circumstances, it would be inappropriate to treat the

amount received by Hassett from his employer to reimburse him for lost wages and overtime as a collateral source.

In this case, the city is both the employer that paid Hassett due to a wage continuation plan and the defendant in Hassett's uninsured motorists action. Given its dual role as employer and defendant, the city argues that it is being compelled to pay Hassett the same amount twice. This is, however, the legal result that flows from § 52-225b. It is also a fair result, for the sums that Hassett received from his wage continuation plan were the fruits of his own labor, namely, the devotion of many years of his life to employment that provided him with just this protection for a "rainy day." The legislature was entitled to decide, as it has so decided, that sums of this description are not to be deducted from damages awards as "collateral sources."

The court, consequently, calculates Hassett's damages as follows. Hassett's economic damages are $8395.66. That award must be reduced by collateral sources of $3009.03. His adjusted economic damages are thus $5386.63. His noneconomic damages are $6000. His total damages are thus $11,386.63.

The parties stipulate that the maximum coverage available under the city's applicable uninsured motorists policy is $13,689.98. Hassett's damages do not exceed this maximum coverage.

Judgment shall therefore enter in favor of plaintiff Hassett on the first count of the amended complaint in the amount of $11,386.63.