## ALFRED CHIULLI AND SONS, INC. *v.* HANOVER INSURANCE COMPANY*

Superior Court, Judicial District of Hartford

File No. CV-06-5002478-S

Memorandum filed June 24, 2008

*Kenny, Brimmer & Mahoney, LLC,* for the plaintiff.

*Michelson, Kane, Royster & Barger, P.C.,* for the defendant.

HON. ROBERT J. HALE, JUDGE TRIAL REFEREE. This action arises from a public construction project for the Thomas Edison Middle School located in Meriden, Connecticut (the Meriden Project). The plaintiff, Alfred Chiulli & Sons, Inc. (Chiulli), entered into a contract with the city of Meriden, whereby Chiulli was to act as the general contractor for the Meriden project. On or about January 11, 1999, Chiulli, as principal, and the

---

* Affirmed. *Alfred Chiulli & Sons, Inc.* v. *Hanover Ins. Co.,* 294 Conn. 689, 987 A.2d 343 (2010).

defendant, Hanover Insurance Company (Hanover), as surety, pursuant to General Statutes § 49-41, executed a payment bond number BCE-1626022 (payment bond).

Chiulli employed a number of subcontractors on the Meriden project. Chiulli's nonpayment of the subcontractors gave rise to numerous claims against the payment bond. Hanover was required to make payment to four such claimants. First, on or about February 5, 2001, Hanover paid $29,484.34 to American Materials Corporation, a trade creditor of Chiulli and bond claimant that performed labor and supplied materials on the Meriden project. Second, on or about March 31, 2001, Hanover paid $15,780 to Northeast Mesa, LLC, a trade creditor of Chiulli and bond claimant that performed labor and supplied materials on the Meriden project. Third, on or about June 20, 2001, Hanover paid $22,486.21 to E. J. Prescott, Inc., a trade creditor and bond claimant that performed labor and supplied materials on the Meriden project. Fourth, on or about August 27, 2001, Hanover paid $34,789.81 to Phoenix Soil, a trade creditor and bond claimant that performed labor and supplied materials on the Meriden project. The four payments totaled $102,540.36. Chiulli has never disputed the propriety or reasonableness of Hanover's payments to the four Chiulli subcontractors listed above.

In addition to the above referenced bond claimants, two additional Chiulli subcontractors asserted claims against the payment bond. These claims gave rise to two lawsuits apart from the instant lawsuit. In *Ravizza Bros., Inc.* v. *Hanover Ins. Co.*, Superior Court, judicial district of Hartford, Docket No. CV-02-0183686, Ravizza Brothers, Inc. (Ravizza), a Chiulli subcontractor on the Meriden project, sued Chiulli, Hanover and Meriden for unpaid blasting services and materials. In *York Hill Trap Rock Quarry Co.* v. *Alfred Chiulli & Sons, Inc.*, Superior Court, judicial district of New Britain, Docket

No. CV-03-0183685-S, another Chiulli subcontractor, York Hill Trap Rock Quarry Company (York Hill), sued Chiulli and Hanover for unpaid labor and materials stemming from the Meriden project (this claim was ultimately stricken by the court). In *Ravizza Bros., Inc.*, Chiulli filed a cross complaint against Meriden for nonpayment and Meriden filed a counterclaim against Chiulli for damages. All the claims in the *Ravizza Bros., Inc.* and *York Hill Trap Rock Quarry Co.* actions were ultimately consolidated and transferred to the complex litigation docket in Waterbury Superior Court.

Attorney Michael P. Barry represented Chiulli in the consolidated actions. As was customary in such matters Hanover tendered the defense of the consolidated actions to Barry, representing both Hanover and Chiulli in the consolidated actions. However, he was not authorized to settle the consolidated cases on behalf of Hanover, rather he reported to Hanover's counsel at that time which was the law firm of Cetrulo & Capone, LLP.

In June of 2005, the parties to these consolidated actions entered into settlement discussions. Although Hanover had not brought any claim against Meriden, Meriden required that as part of any settlement a release from Hanover in favor of the city of Meriden would be necessary. On June 7, 2005, Barry contacted attorney Paula-Lee Chambers at the law firm of Cetrulo & Capone by telephone and offered $5000 in exchange for a release in favor of the city of Meriden and a settlement of the consolidated actions and claims of American Materials Corporation, Northeast Mesa, LLC, E. J. Prescott, Inc., and Phoenix Soil, which claims were not a part of the consolidated actions.

What transpired during the settlement negotiations is the subject of the present lawsuit. Chiulli maintains

that Hanover breached the settlement agreement. Hanover denies entering into a settlement agreement and maintains that it is entitled to indemnification by Chiulli for the payments that Hanover made to Chiulli's four subcontractors. Chiulli settled the consolidated actions with the city of Meriden and with Ravizza but Meriden would not release the funds without a release from Hanover in its favor. Ultimately, Hanover agreed to provide the release subject to an agreement of Hanover, Chiulli and the city of Meriden under which $126,342.20 was withheld from a $425,000 payment to Chiulli and placed in an escrow account pending resolution of the instant dispute.

On February 18, 2006, Chiulli filed a three count complaint against Hanover. The first count alleges that Hanover breached the settlement agreement. The second count seeks a declaratory judgment that Hanover has no right to the escrow funds. The third count alleges that Hanover's actions violate the Connecticut Unfair Trade Practices Act (CUTPA). The third count was later withdrawn by Chiulli.

On May 4, 2006, Hanover asserted indemnification and subrogation counterclaims against Chiulli. On June 23, 2006, Hanover amended its counterclaims against Chiulli and cited as individual indemnitors, Alfred Chiulli III and Laura Chiulli into the case. This counterclaim had three counts. The first count alleged a breach of a contractual indemnification claim. Count two alleged a breach of a common-law indemnification claim. These were against Chiulli, Alfred Chiulli III and Laura Chiulli. The third count of the counterclaim is for equitable subrogation. By virtue of the third count of the amended counterclaims, Hanover claimed that it has "equitable rights of subrogation to [the] escrowed funds that are derived [from] its payments to the trade creditors/bond claimants under the Meriden bonds . . . ." Hanover seeks a declaratory judgment that the unpaid contract

funds currently being held in escrow should be released to Hanover.

Each of the parties has filed a motion for summary judgment. Chiulli moved for summary judgment on the second count of its complaint arguing that it is entitled to the escrow funds because Hanover's claims are barred on statute of limitations grounds. Hanover moved for summary judgment on the third count of its counterclaim, which alleges equitable subrogation.

The court, *Elgo, J.*, rendered a decision in favor of Chiulli on his motion for summary judgment based on the statute of limitations holding that a three year statute of limitations, General Statutes § 52-598a, bars count one of Hanover's counterclaim alleging breach of an indemnification contract. Hanover's common-law indemnification claim (count two) was voluntarily withdrawn. Hanover voluntarily withdrew its claims against individual indemnitors Alfred Chiulli III and Laura Chiulli. As for Hanover's motion for summary judgment as to the third count of its amended counterclaim arguing that there is no issue as to Hanover's claim for equitable subrogation, the court, *Elgo, J.*, found that "[i]t is clear from the evidence and the undisputed facts that no genuine issue of material fact exists as to Hanover's claim for equitable subrogation." However, she refrained from granting summary judgment in Hanover's favor because Hanover did not demonstrate that no genuine issue of material fact existed as to all of Chiulli's special defenses.

This court agrees with Judge Elgo's excellent analysis of the applicability of equitable subrogation to this case and agrees with her conclusion.

Before the court therefore, there are two issues. First, did Hanover agree to settle all claims relating to the Meriden project for $5000 and an exchange and

releases. Second, was Chiulli able to prove any of its nine special defenses.

In the first count of the complaint Chiulli alleges that Chiulli through its counsel, and Hanover through its counsel, entered into an agreement on June 7, 2005, whereby Hanover agreed to provide Chiulli with a release in favor of Meriden for $1 and a release in favor of Chiulli in exchange for $5000 to be paid from settlement proceeds due Chiulli from Meriden, and a release in favor of Hanover from Chiulli, York Hill, Meriden and Ravizza. Chiulli claims that this contract was entered into in a telephone call between its attorney, Michael Barry, and Hanover's attorney, Paula-Lee Chambers on June 7, 2005. Barry testified that Chambers said that she would accept the $5000 and releases from the other parties in exchange for the releases from Hanover to Chiulli and Meriden. Barry told Chambers it would take sixty days for the funds to be received as those funds would come from the state of Connecticut. On June 8, 2005, Barry sent to Chambers a letter outlining the terms of the agreement and the two releases Hanover would have to execute and return to him. Barry received no response from Chambers, who had left her position with the law firm of Cetrulo & Capone abruptly at the end of June, 2005. Barry contacted her on September 20, 2005, he stated that her recollection was that she thought there had been a settlement in April or May but she had left there at the end of June so she had no idea what went on between the end of June and September. On June 9, 2005, the day after her phone call with Barry, Chambers wrote to Hanover and advised Hanover of Chiulli's offer of "$2,500 to $5,000." She also requested that Hanover review its records "to determine how much the indemnity obligation is to date, [so that] I will be in a better position to make a recommendation based on the financials and the settlement from . . . Meriden." This letter

was received by Ronald Ritland of Hanover on June 13, 2005. The Chambers billing record of June 14, 2005, exhibit M, shows a bill for a letter she sent Ritland at Hanover with a notation, "letter to Ron Ritland was released to review and execute same." There are conflicting statements regarding financial information. Barry has no recollection of ever receiving any request for financial statements, whereas Chambers' recollection was that she had financial statements in the file though she was not sure exactly what they were. Routinely she always sought financial statements. Attorney Bert Capone testified he sought financial statements from Barry. Barry attempted to contact Chambers on or about July 1, 2005. He was told that she had left the employ of Cetrulo & Capone, LLP. Barry called that firm a second time and demanded to speak to Capone. Capone was not familiar with the file and was unsure as to whether his firm retained the Hanover files. He called Barry back a short time later and requested the releases Barry had sent to Chambers. He informed Barry that he would be handling the Hanover files henceforth. Capone indicated that there were some changes that had to be made in the releases, which he made in ink and faxed to Barry. Capone asked at a later date for copies of the release in favor of Hanover that would be provided by the other parties, which were sent by Barry. Barry wrote again on September 9, requesting the releases but no response was received. On September 20, 2005, Capone called Barry and for the first time told him there was a problem, that Hanover never agreed to the settlement.

While the court believes that Barry sincerely believed that Chambers had the authority to settle and that in fact she had agreed to settle, which belief was led on by her telling him that she would recommend the settlement and Hanover usually accepted her recommendation and by the delay from June to September with

exchanges of releases before Hanover denied the agreement, the court is forced to the conclusion that there was insufficient evidence to show by a preponderance of evidence that there was in fact such an agreement. The bulk of the evidence shows that Chambers did not have the authority to settle; that she recognized it; that she had turned the matter over to Hanover and that Hanover failed to approve the settlement. Accordingly, judgment may enter for Hanover on count one of the Chiulli's complaint.

As indicated above the second issue before this court is whether or not Chiulli has proven its special defenses.

Chiulli filed nine special defenses to Hanover's counterclaim. They are statute of limitations, accord and satisfaction, claims not raised in a prior pending action, no right to equitable subrogation against Meriden, laches, unclean hands, res judicata, estoppel due to existence of an adequate remedy at law and estoppel based on detrimental reliance. Judge Elgo effectively disposed of the defense of statute of limitations and no equitable right of subrogation against Meriden in her ruling on summary judgment with which this court agrees. In addition to the special defenses filed by Chiulli to count three of the counterclaim it has maintained that Hanover did not prove it discharged the obligations of the four contractors of Chiulli that Hanover had made payments to. However, Chiulli had repeatedly acknowledged the accuracy of the amounts paid and the reasonableness of Hanover making these payments. In addition, the court specifically permitted testimony regarding the amounts paid by Hanover to claimants. Also Judge Elgo wrote in her opinion with respect to the summary judgment, "[i]t is clear from the evidence and the undisputed facts that no genuine issue of material fact exists as to Hanover's claim for equitable subrogation." No evidence was introduced by Chiulli to indicate that these debts were not fully paid or that

there was any claim outstanding with respect to any of the four.

Chiulli recognizes that in essence, Judge Elgo ruled that the statute of limitations cited by Chiulli in the special defense was not the appropriate statute of limitations but rather the appropriate statute was General Statutes § 52-576. Yet it attempts in its posttrial brief to argue that § 52-576 is applicable to defeat the third count of Hanover's counterclaim. The court is of the opinion, however, that Chiulli cannot raise this statute of limitation defense because it failed to raise the correct issue in its special defenses or in any subsequent pleading or motion. This fact was specifically recognized by the court on trial when it upheld Hanover's objection as to the admissibility of any evidence having to do with the application of an unpled statute of limitation. Practice Book § 10-50 provides the statute of limitation must be specially pleaded and Practice Book § 10-3 (a) provides that "[w]hen any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number."

With respect to the special defense of laches, this concept "consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant . . . . The mere lapse of time does not constitute laches . . . ." (Citation omitted; internal quotation marks omitted.) *Traggis* v. *Shawmut Bank of Connecticut, N.A.*, 72 Conn. App. 251, 262, 805 A.2d 105, cert. denied, 262 Conn. 903, 810 A.2d 270 (2002). In the opinion of the court Chiulli has not presented any credible evidence demonstrating that an "inexcusable delay" occurred, that Hanover caused the alleged delay, or that Chiulli suffered prejudice as a result of the alleged delay.

Pertinent to the subject of laches and also pertinent to the argument that Hanover had an adequate remedy

at law is the undisputed fact that subsequent to the construction for Meriden Chiulli was in very serious financial condition and for a long period of time it appeared that Hanover would be in no position to obtain much of a repayment of its debts. As to the allegation that Hanover failed to use its adequate remedy at law, i.e., direct action against Chiulli, Chiulli takes the position that this failure precludes any equitable subrogation rights. Equitable subrogation is a cause of action sounding in equity. "[T]he right of [legal or equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect." (Internal quotation marks omitted.) *Wasko* v. *Manella*, 269 Conn. 527, 532–33, 849 A.2d 777 (2004). Hence the proposition that a party must first exhaust its indemnification rights before pursuing its equity subrogation rights runs directly counter to the well established law regarding equitable subrogation.

Chiulli's allegations that Hanover operated with unclean hands appears to be based upon a series of unproven factors, such as Hanover's knowing that Chiulli believed it had a settlement and yet delaying denial of the settlement for two months, this delay as the cause of letting the trial date go by; failure to provide a lease for $1 to Meriden; threatening to sue Meriden if it released settlement money without paying Hanover. "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue . . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Internal quotation marks omitted.) *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69

Conn. App. 824, 835–36, 798 A.2d 445 (2002). In the opinion of this court nothing alleged by Chiulli in this regard is sufficient for the court to maintain that Hanover acted with unclean hands.

In the opinion of this court Hanover is entitled to judgment on the third count of this counterclaim in the amount of $102,540.36, the sum which it paid to the four subcontractors on Chiulli's behalf together with all interest earned thereon while in escrow and under the terms of the escrow agreement.