ALFRED CHIULLI AND SONS, INC. *v.* HANOVER
INSURANCE COMPANY
(SC 18398)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and
McLachlan, Js.

Argued December 7, 2009—officially released February 9, 2010

*Michael P. Barry,* for the appellant (plaintiff).

*Paul Fitzgerald,* for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Alfred Chiulli and Sons,
Inc., as general contractor and principal, and the named
defendant, Hanover Insurance Company (Hanover),[1] as
surety, executed a payment bond pursuant to General

---

[1] Hanover named Alfred D. Chiulli III and Laura Chiulli as counterclaim
defendants, but ultimately withdrew its claims against these individuals.

Statutes (Rev. to 1999) § 49-41[2] in favor of the city of Meriden (city), in connection with the construction of the Thomas Edison Middle School in the city (project). The plaintiff brought this action alleging, inter alia, that Hanover had breached a settlement agreement concerning a dispute over payments that Hanover had made to certain of the plaintiff's subcontractors on the project pursuant to the bond. Thereafter, Hanover brought a counterclaim against the plaintiff alleging, inter alia, that it was entitled to reimbursement from the plaintiff for the payments that it had made to the subcontractors under a theory of equitable subrogation. After a trial to the court, the court rendered judgment in favor of Hanover on the plaintiff's complaint and on Hanover's counterclaim. The plaintiff then filed this appeal[3] claiming that the trial court improperly: (1) found that Hanover was entitled to recover on its claim for equitable subrogation when it had not presented evidence that the subcontractors had valid claims against the plaintiff for the amounts that Hanover had paid them or that Hanover had paid the subcontractors in full; and (2) denied the plaintiff's request to amend its special defenses to Hanover's counterclaim to include an allegation that the counterclaim was barred by General

[2] General Statutes (Rev. to 1999) § 49-41 provides in relevant part: "(a) Each contract exceeding fifty thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof shall include a provision that the person to perform the contract shall furnish to the state or the subdivision on or before the award date, a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work . . . ."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Statutes § 52-576.[4] We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiff was the general contractor on the project. In connection with the project, the plaintiff, as principal, and Hanover, as surety, executed a payment bond in favor of the city. The plaintiff failed to pay several of its subcontractors on the project, and Hanover made payments in the amount of $102,540.36 to four of these subcontractors pursuant to the terms of the bond.[5] Two other subcontractors brought actions for nonpayment against the plaintiff and Hanover and, in one case, the city. In one of these actions, the plaintiff filed a cross complaint against the city for nonpayment and the city filed a counterclaim for damages. The actions ultimately were consolidated for trial.

Thereafter, the parties entered into negotiations to settle the disputes. Ultimately, the parties settled the consolidated actions and the city agreed to release funds owed to the plaintiff, provided that Hanover would agree to release any claims that it had against the city. Hanover agreed to provide the release subject to an agreement that $126,342.20 would be withheld from the amounts that the city paid to the plaintiff and placed in an escrow account pending resolution of the dispute over Hanover's claim for reimbursement of its payment of $102,540.36 to the plaintiff's subcontractors.

Thereafter, the plaintiff filed a three count complaint against Hanover alleging that Hanover had breached a settlement agreement concerning the disputed pay-

---

[4] General Statutes § 52-576 provides in relevant part: "(a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

[5] Specifically, Hanover paid $29,484.34 to American Materials Corporation, $15,780 to Northeast Mesa, LLC, $34,789.81 to an entity identified as Phoenix Soil and $22,486.21 to E. J. Prescott, Inc.

ments (count one), seeking a declaratory judgment that Hanover was not entitled to the escrow funds (count two) and alleging that Hanover had engaged in unfair trade practices (count three).[6] Hanover filed a three count counterclaim alleging that the plaintiff was contractually obligated to indemnify Hanover for its payments to the plaintiff's subcontractors (count one), that the plaintiff had a common-law obligation to indemnify Hanover (count two), and seeking a judgment declaring that Hanover was entitled to reimbursement by the plaintiff under the theory of equitable subrogation (count three).

The trial court, *Elgo, J.*, subsequently granted the plaintiff's motion for summary judgment with respect to the first count of Hanover's counterclaim on the ground that it was barred by the statute of limitations. Hanover voluntarily withdrew the second count of its counterclaim. The trial court denied Hanover's motion for summary judgment on the third count of its counterclaim. Although the court concluded that "no genuine issue of material fact exists as to Hanover's claim for equitable subrogation," it denied the motion because Hanover had not established that there was no genuine issue of material fact as to the plaintiff's special defenses.

After a trial to the court, the court, *Hon. Robert J. Hale*, judge trial referee, found that the plaintiff had failed to prove its claim that Hanover had breached the settlement agreement. The court also found that Hanover had proved its equitable subrogation claim. In support of this finding, it stated that the plaintiff "had repeatedly acknowledged the accuracy of the amounts paid [by Hanover to the subcontractors] and the reasonableness of . . . these payments" and that Hanover

---

[6] The plaintiff withdrew its unfair trade practices claim before trial. The trial court rendered judgment for Hanover on the remaining counts of the plaintiff's complaint, and the plaintiff does not challenge that ruling on appeal. Accordingly, we need not discuss the facts underlying the plaintiff's claims.

had presented evidence of the amounts it had paid.[7]

---

[7] The plaintiff contends, and our review of the record reflects, that it did not repeatedly acknowledge at trial that the amounts paid by Hanover to the subcontractors were accurate and reasonable. During discovery, however, Hanover asked the plaintiff to "[i]dentify all documents which constitute or memorialize an agreement between you and any other individual or entity for any type of improvement or construction work to the [project], including but not limited to all contracts, subcontracts, plans, specifications, addenda, change orders, proposed change orders, purchase orders, amendments, supplements, general conditions, and quotes for additional work, indicating whether such quotes were accepted or rejected. For each such document, please state:

"(a) the date of the agreement;

"(b) the parties to the agreement;

"(c) the amount of the agreement; and

"(d) the work called for under the agreement . . . ."

The plaintiff responded to this interrogatory as follows: "The information requested consists of thousands of documents, all of which may no longer exist . . . .

"All documents existing are available for inspection at either the plaintiff's law office or [the] plaintiff's office. Contract and change order[s] between [the plaintiff], [the city] and [the four subcontractors] are provided in the [r]equest for [p]roduction.

"The plaintiff, for purposes of this litigation, does not dispute that [Hanover] made the payments as surety on the bonds, does not dispute the amounts paid, nor the reasonableness of making said payments."

In addition, in response to a second interrogatory requesting detailed billing and payment information for the four subcontractors to which Hanover had made payments, the plaintiff responded in part that there were "no payments outstanding to any of the . . . entities" and that it did "not dispute that Hanover paid bond claims" by the four subcontractors. The interrogatories and responses were introduced as an exhibit at trial. In response to the second interrogatory, the plaintiff also provided a payment history, which was not introduced as an exhibit at trial.

The plaintiff now claims that it never conceded that the amounts paid by Hanover accurately reflected the amounts owed by the plaintiff to the subcontractors, but it merely conceded that Hanover had paid the amounts in good faith for purposes of Hanover's indemnity action. We conclude that Hanover and the trial court reasonably could have interpreted the plaintiff's interrogatory responses to mean that the plaintiff did not contest that Hanover properly had made the payments to the subcontractors for purposes of all of Hanover's counterclaims, including its claim for equitable subrogation, which was also pending at the time that the plaintiff provided the responses. The first interrogatory clearly requests contract information, and the plaintiff's response indicates that the amounts that Hanover paid were reasonable "for purposes of this litigation," which included Hanover's equitable subrogation claim, not that they were reasonable solely for purposes of Hanover's claim for indemnification. The plaintiff's response to the second interroga-

The trial court also stated that "[n]o evidence was introduced by [the plaintiff] to indicate that these debts were not fully paid or that there was any claim outstanding with respect to any of the four [subcontractors]."[8] The court further concluded that the plaintiff was not entitled to raise a claim that Hanover's counterclaim for equitable subrogation was time barred under § 52-576 because the plaintiff had failed to raise the statute of limitations as a special defense prior to trial as required by Practice Book § 10-50.[9] Accordingly, the court concluded that Hanover was entitled to $102,540.36 of the amounts held in the escrow fund, plus accrued interest, and rendered judgment accordingly. This appeal followed.

tory requesting detailed payment history implies that a comprehensive analysis of the plaintiff's records would not be necessary because the plaintiff made no claim that it had outstanding debts to any of its subcontractors and did not dispute that Hanover had paid subcontractor claims.

[8] The trial court made this finding in response to the plaintiff's claim that Hanover would not be entitled to equitable subrogation unless it established that it had paid the amounts owed to each of the subcontractors in full. In light of the court's finding that the plaintiff had acknowledged the amount and reasonableness of the payments, we do not believe that the court's statement indicates that the court had shifted the burden of proof to the plaintiff to disprove Hanover's equitable subrogation claim. Rather, the trial court merely recognized that the burden was not on Hanover to prove a negative, i.e., that the subcontractors had no outstanding claims against the plaintiff. We agree with the trial court that the plaintiff failed to establish the factual predicate for its legal claim that Hanover was not entitled to equitable subrogation because it had not paid the subcontractors in full. Accordingly, we need not address the merits of that legal claim.

[9] Practice Book § 10-50 provides: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus, accord and satisfaction, arbitration and award, coverture, duress, fraud, illegality not apparent on the face of the pleadings, infancy, that the defendant was non compos mentis, payment (even though nonpayment is alleged by the plaintiff), release, the statute of limitations and res judicata must be specially pleaded, while advantage may be taken, under a simple denial, of such matters as the statute of frauds, or title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."

Our examination of the record and briefs and our consideration of the arguments of the parties persuades us that the judgment of the trial court should be affirmed. The issues were resolved properly in the trial court's concise and well reasoned opinion. See *Alfred Chiulli & Sons, Inc.* v. *Hanover Ins. Co.*, 51 Conn. Sup. 383, 989 A.2d 675 (2008). Because that opinion fully addresses all arguments raised with respect to the issues raised in this appeal, we adopt it as a proper statement of the applicable law concerning those issues. It would serve no useful purpose for us to repeat the discussion contained therein. See *Davis* v. *Freedom of Information Commission*, 259 Conn. 45, 55–56, 787 A.2d 530 (2002).

The judgment is affirmed.