******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PACIFIC INSURANCE COMPANY, LIMITED *v.*
CHAMPION STEEL, LLC, ET AL.
(SC 19402)
(SC 19403)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.*

*Argued April 4—officially released September 27, 2016*

*Jonathan M. Freiman*, with whom, on the brief, was *Jenny R. Chou*, for the appellant in Docket No. SC 19402 (named plaintiff).

*Jenny R. Chou*, with whom, on the brief, was *Jonathan M. Freiman*, for the appellant in Docket No. SC 19403 (proposed intervenor Connecticut Reliable Welding, LLC).

*Sylvia Marisa Ho*, with whom were *Kelly B. Gaertner*, and, on the brief, *Kevin C. Hines*, *Bryan J. Hass* and *Paul Erickson*, for the appellees in Docket Nos. SC 19402 and SC 19403 (defendants).

*Opinion*

ZARELLA, J. The dispositive issue in the present appeals is whether a workers' compensation insurer can maintain an equitable subrogation claim against third-party tortfeasors to recover benefits it has paid, on behalf of an insured employer, to an injured employee. We conclude that it can.

The facts and procedural history giving rise to this appeal can be succinctly stated. On May 17, 2011, James Doughty, an employee of Stanford Dulaire, doing business as Connecticut Reliable Welding, LLC (Reliable), was working at a construction site when the retractable lifeline he was wearing failed, causing him to fall and sustain physical injuries. Because Doughty's injuries occurred during the course of his employment, Reliable was required to pay benefits under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. The plaintiff, Pacific Insurance Company, Limited (Pacific), a writing company of The Hartford Financial Services Group, Inc., had issued an insurance policy providing workers' compensation coverage to Reliable, and, therefore, Pacific paid Doughty workers' compensation benefits.

In May, 2013, Pacific brought the present action against the defendants, Champion Steel, LLC, Shepard Steel Company, Inc., and Dimeo Construction Company (collectively, defendants), seeking to recover the benefits it had paid to Doughty.[1] In its complaint, Pacific essentially alleged that the defendants were negligent in their failure to provide an adequate fall arrest system at the work site, which negligence, Pacific avers, caused Doughty's injuries. The defendants filed separate motions to dismiss the complaint, claiming that the trial court lacked subject matter jurisdiction because Pacific did not have standing to bring an action under either General Statutes § 31-293 or the common-law doctrine of equitable subrogation. Pacific objected to the defendants' motions to dismiss and also filed an amended writ and amended complaint, adding Reliable as a plaintiff. Pacific also filed a motion to substitute Reliable as the party plaintiff, and Reliable filed a motion to intervene in the action. The defendants objected to Pacific's motions to substitute party plaintiff and Reliable's motion to intervene. On March 17, 2014, the trial court, *Wiese, J.*, denied Pacific's motion to substitute party plaintiff and granted the defendants' motions to dismiss Pacific's complaint. The trial court did not address Reliable's motion to intervene, instead concluding that it was rendered moot by the dismissal of Pacific's complaint. Pacific and Reliable separately appealed from the judgment of the trial court rendered in favor of the defendants, and we transferred the appeals to this court.

Pacific makes four arguments in its appeal, Docket No. SC 19402. Specifically, Pacific claims that the trial

court improperly: (1) considered the legal sufficiency of its equitable subrogation claim, the standard applicable to reviewing a motion to strike, when addressing the defendants' motions to dismiss, and, therefore, incorrectly concluded that Pacific did not have standing to bring, and the court did not have subject matter jurisdiction to consider, an equitable subrogation claim against the defendants; (2) concluded that workers' compensation insurers cannot bring equitable subrogation claims against third-party tortfeasors; and (3) denied Pacific's motion to substitute Reliable as the party plaintiff. In addition, Pacific contends that it has a statutory claim for subrogation under § 31-293, and it should be allowed to amend its complaint to assert that claim because the defendants' motions to dismiss were, in effect, motions to strike.[2] In response, the defendants argue that: (1) the motions to dismiss were appropriate in this context and the trial court properly granted the motions because the act does not grant the trial court the power to hear actions brought by insurers against third-party tortfeasors; (2) the trial court properly concluded that insurers do not have an equitable right of subrogation in the context of workers' compensation and the act does not provide Pacific with a direct cause of action; and (3) the denial of Pacific's motion to substitute is not properly before the court and cannot be addressed, and, alternatively, the motion was properly denied.

In its separate appeal, Docket No. SC 19403, Reliable claims that the trial court improperly: (1) concluded that Reliable did not have standing; (2) denied Pacific's motion to substitute Reliable as the plaintiff; and (3) concluded that Reliable's motion to intervene was rendered moot. At oral argument, counsel for both Reliable and the defendants agreed that if we concluded in SC 19402 that Pacific properly asserted an equitable subrogation claim, we would not need to reach the issues in SC 19403. Accordingly, we do not address Reliable's claims on appeal. Moreover, because we do not reach Reliable's claims, we need not consider the defendants' argument that Reliable did not have standing to invoke this court's jurisdiction.

Our review of a trial court's ruling on a motion to dismiss is de novo and we indulge every presumption favoring jurisdiction. *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109 A.3d 903 (2015). In addition, because the issue of whether a workers' compensation insurer may assert an equitable subrogation claim is a question of law, our review of that issue, accordingly, is also de novo.

I

We first address the jurisdictional issue. In their memoranda of law in support of their motions to dismiss, the defendants argued that Pacific did not have standing to bring this action because Pacific had not cited any authority recognizing a workers' compensation insur-

er's right to bring an equitable subrogation claim and, traditionally, employers and their insurers did not have a right to assert such a claim against third parties who had caused harm to an employee.[3] The trial court agreed and dismissed Pacific's complaint, reasoning that Pacific had not cited any controlling authority that had expanded equitable subrogation to the workers' compensation context. It further reasoned that the act deviated from the common law by creating a right for the employer to pursue an action against a third party and, therefore, the act must be strictly construed. The trial court further reasoned that the act is a " 'complex and comprehensive *statutory* scheme,' " and, consequently, it is for the legislature, not the courts, to carve out exceptions. (Emphasis in original.)

In its appeal to this court, Pacific argues that the trial court improperly considered the legal sufficiency of its equitable subrogation claim, which is the standard applicable to reviewing a motion to strike, rather than Pacific's standing to assert such a claim. In essence, its claim is that whether a common-law claim exists is not jurisdictional and the proper procedural tool for testing whether such a claim exists is a motion to strike. We need not decide whether the trial court improperly considered the legal sufficiency of Pacific's claims in addressing the defendants' motions to dismiss, or whether the proper procedural vehicle for testing whether a claim exists is a motion to dismiss or a motion to strike, because we conclude that Pacific can properly assert an equitable subrogation claim. Moreover, we agree with Pacific's argument that, due to its obligation to pay workers' compensation benefits to Doughty as a result of the defendants' negligence, it has a colorable claim of injury and a direct interest in the outcome of this action, and, therefore, standing. See, e.g., *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 550, 119 A.3d 541 (2015) (Standing generally exists "when a complainant makes a colorable claim of direct injury [that] he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." [Internal quotation marks omitted.]).

II

We next consider whether a workers' compensation carrier can maintain a claim for equitable subrogation against a third-party tortfeasor whose negligence caused harm to an employee. Subrogation is a doctrine of equity that allows one party, such as an insurer (known as the subrogee), to assert the legal rights or claims of another person, such as an insured (known as the subrogor), against a third party, for example, a tortfeasor, when the subrogee has indemnified the subrogor for a loss caused by the third-party tortfeasor.

See *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, 309 Conn. 449, 455, 72 A.3d 36 (2013) ("In its simplest form, subrogation allows a party who has paid a debt to step into the shoes of another [usually the debtee] to assume his or her legal rights against a third party to prevent that party's unjust enrichment. . . . The common-law doctrine of . . . equitable subrogation therefore enables an insurance company that has made a payment to its insured to substitute itself for the insured and to proceed against the responsible third party." [Citation omitted; internal quotation marks omitted.]). Subrogation, which evolved from the civil law, is intended to do justice " 'without regard to form or mere technicality.' " *Home Owners' Loan Corp.* v. *Sears, Roebuck & Co.*, 123 Conn. 232, 238, 193 A. 769 (1937). "The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it." (Internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 371, 672 A.2d 939 (1996). Thus, equitable subrogation works to prevent a tortfeasor from being unjustly enriched by the fortuitous circumstance that the victim's loss is covered by an insurer. See *Wasko* v. *Manella*, 269 Conn. 527, 548–49, 849 A.2d 777 (2004); id., 549 ("we see no logical reason for the defendant to be unjustly enriched merely because he burned down the home of a party that had the foresight to purchase fire insurance"). The doctrine also serves equity by avoiding double recovery in cases where the insured may recover from both the tortfeasor and insurer. See *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 456. "As now applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 371.

Pacific argues that this court has recognized an insurer's broad, common-law right to bring a subrogation action when it has paid an insured for a loss caused by a third-party tortfeasor and that the workers' compensation statutory scheme has not abrogated that right. It further argues that public policy supports recognizing an equitable subrogation claim because an employer or an employee may not have an incentive to bring an action against the tortfeasor.

We agree. In our view, it is beyond dispute that equitable subrogation has long existed at common law, and that the doctrine has long been available to an insurer seeking reimbursement for a loss it indemnifies when a third party is liable for such loss. See, e.g., *Regan* v. *New York & New England Railroad Co.*, 60 Conn. 124,

131, 22 A. 503 (1891) ("[i]t has hitherto been established by a line of decisions reaching backward more than a century and substantially unbroken by dissent . . . that where the insurer has indemnified the owner of the goods lost, he is entitled to be subrogated to all the means of indemnity which the owner held against the party causing the loss and primarily liable therefor"); *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, 25 Conn. 265, 277 (1856) ("[b]y virtue of this doctrine, there is no doubt of the right of an insurer, who has paid a loss, to use the name of the insured, in order to obtain redress from the author of the wrong");[4] *Orvis* v. *Newell*, 17 Conn. 97, 101 (1845) ("[the] right of substitution or subrogation rests upon the basis of mere equity and benevolence" [internal quotation marks omitted]); see also *Wasko* v. *Manella*, supra, 269 Conn. 538 n.9 (citing *Orvis* v. *Newell*, supra, 97, for proposition that insurers had subrogation rights at common law). In fact, in *Regan* v. *New York & New England Railroad Co.*, supra, 124, decided in March, 1891, this court noted that an insurer's right of subrogation had existed, at that time, for more than one century; id., 131; and that the decisions of the Supreme Court of the United States and the high courts of many of our sister states were in accord. Id., 131–33. It is fundamental that if the legislature wishes to abrogate the common law, it must do so expressly. See *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 70, 68 A.3d 1150 (2013) ("[w]e recognize only those alterations of the common law that are clearly expressed in the language of the statute" [internal quotation marks omitted]); *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 789, 865 A.2d 1163 (2005) ("[a]lthough the legislature may eliminate a [common-law] right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed" [internal quotation marks omitted]). We have not found any provision in the act, and the defendants have not pointed to any, that abrogates this long-standing doctrine in the context of workers' compensation. In other areas of workers' compensation, however, the legislature has expressly abrogated the common law. For example, at common law an employee was permitted to bring an action against his employer for injuries he sustained due to the employer's negligence. See *Swain* v. *O'Loughlin*, 80 Conn. 200, 204–205, 67 A. 480 (1907) (sustaining negligence action brought by injured employee against employer); see also *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 536–40, 494 A.2d 555 (1985) (reviewing history of employer's common-law duties to employees). The act expressly abrogated this common-law cause of action against the employer. See General Statutes § 31-284 (a) ("[a]n employer who complies with the requirements of [the act] shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment").

It is apparent, therefore, that the legislature knew how to express its intention to supersede common-law rules. It is axiomatic that the legislature is presumed to be aware of the common law when it enacts statutes. See *R.C. Equity Group, LLC* v. *Zoning Commission*, 285 Conn. 240, 257 n.20, 939 A.2d 1122 (2008) ("the legislature is always presumed to have created a harmonious and consistent body of law . . . [and] to be aware of prior judicial decisions involving common-law rules" [citation omitted; internal quotation marks omitted]). Thus, we assume that in crafting the original act, and the subsequent revisions to the act, the legislature was aware of the long-standing and strong doctrine of equitable subrogation and intentionally did not write a prohibition into the workers' compensation statutory scheme.

Our conclusion that a workers' compensation insurer may maintain a common-law equitable subrogation action against a third-party tortfeasor who is liable for injuries sustained by an employee is also supported by public policy. First, allowing insurers to bring such actions serves the public policy of containing the cost of workers' compensation insurance. See *Quire* v. *Stamford*, 231 Conn. 370, 375, 650 A.2d 535 (1994) (§ 31-293 [a] implements public policy of containing cost of workers' compensation insurance). In some cases, employees and employers may have no incentive to bring an action against a third-party tortfeasor who has caused injury to the employee. For example, an employee may not wish to incur the cost of litigation when his injuries have been fully compensated by a workers' compensation insurer. Similarly, an employer may be reluctant to invest time and money into an action against a third party when it has not provided any workers' compensation benefits out of its own pocket. In such cases, workers' compensation insurance carriers would be without recourse if we were to hold that they could not institute equitable subrogation claims against the third-party tortfeasor, and, thereby, the costs of workers' compensation would likely increase. Second, equitable subrogation actions prevent the unjust enrichment of tortfeasors in situations in which the employee and employer do not bring actions to recover damages caused by the tortfeasors.

The defendants argue that Pacific cannot assert equitable subrogation against them because, at common law, personal injury claims could not be assigned. Moreover, the defendants assert, the act created a right in the employer that had never before existed—namely, the right to bring a direct action against a tortfeasor to recoup workers' compensation benefits it paid to an employee for injuries the tortfeasor is legally liable for—and, in so doing, deviated from the common law. As a result, the defendants conclude that the employer's right must be strictly construed. Because the act allows an employer to pursue a claim against the tortfeasor,

the defendants aver, it would be inconsistent with the legislative intent to allow workers' compensation insurers to assert equitable subrogation claims, presumably because the statute is silent in regard to insurers' subrogation rights. The defendants, in part, are correct. The common law prohibited assignment of personal injury claims and the act created a new right for employers. See *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 382–83, 698 A.2d 859 (1997). This line of reasoning, however, confuses the issue. First, as this court explained in *Westchester Fire Ins. Co.*, there is a discernible difference between assignment and equitable subrogation, at least in the context of indemnity insurance. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 370, 372–73. In indemnity insurance, the insurer does not act as a "mere volunteer," and its obligation to pay the insured's loss predates the loss. Id., 372. Conversely, in an assignment, the assignee volunteers to pay the assignor for its loss only after the loss has occurred, and, consequently, the assignee does not have any preexisting obligation to the assignor. Id., 369–70, quoting *Aetna Casualty & Surety Co.* v. *Associates Transports, Inc.*, 512 P.2d 137, 141 (Okla. 1973). Due to this difference, this court stated that the public policy reasons supporting the common-law prohibition against the assignment of personal injury claims did not apply to an indemnity insurer's right to equitable subrogation. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 373. In such a case, "we need not be concerned about unscrupulous interlopers and litigious persons [who are] to be discouraged from purchasing claims for pain and suffering and prosecuting them in court as assignees." (Internal quotation marks omitted.) Id. Thus, a claim brought under the doctrine of equitable subrogation, such as Pacific's claim in the present case, is not an assignment, and, consequently, the common-law prohibition against the assignment of personal injury claims does not apply in such a case.

The defendants argue that the enactment of No. 97-58 of the 1997 Public Acts (P.A. 97-58), which abolished uninsured motorist insurance carriers' subrogation rights, effectively abrogating our holding in *Westchester Fire Ins. Co.*, is an affirmation by the legislature that personal injury actions cannot be assigned. Insofar as the defendants intend to assert, by making this argument, that P.A. 97-58 abrogated our conclusion in *Westchester Fire Ins. Co.* that assignments and equitable subrogation are distinct, we do not agree. We read the relevant part of the public act as merely abrogating the common-law subrogation rights of uninsured motorist insurance carriers.[5] Additionally, even if the enactment of P.A. 97-58 is a legislative affirmation of the common-law prohibition against the assignment of personal injury claims generally, the legislature has specifically abrogated this rule in the context of workers' compensation, as subsequently explained in this opinion. See

General Statutes § 31-293 (a).[6]

Second, an insurer's right of equitable subrogation is distinct from an employer's right to bring an action against a third-party tortfeasor who harmed an employee. The employer's right is statutory and was created by the act.[7] See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 381. Prior to the enactment of the act, however, and pursuant to the common-law prohibition against the assignment of personal injury claims, the employer had no such right. Id., 382. Thus, the statute had to expressly provide for the employer's right to bring such an action. See *Caciopoli* v. *Lebowitz*, supra, 309 Conn. 70 (legislature's abrogation of common law must be express). On the other hand, an insurer's right of equitable subrogation arises from the common law, and it existed at the time the act was enacted. See, e.g., *Regan* v. *New York & New England Railroad Co.*, supra, 60 Conn. 131. Accordingly, the legislature did not need to expressly create the insurer's right. See *Wasko* v. *Manella*, supra, 269 Conn. 538–39 n.9 ("The common law did not permit the assignment of personal injury actions, and thus the legislature specifically, and explicitly, had to abrogate the common law in order to allow an *employer* to subrogate against a tortfeasor. . . . This was accomplished with the enactment of the [act], and specifically § 31-293. In the area of insurance contracts, however, equitable principles traditionally allowed subrogation against the responsible party when an insurer paid for damages pursuant to an indemnity agreement." [Citation omitted; emphasis added.]). We conclude, in light of this difference, that recognizing a workers' compensation insurer's right of equitable subrogation is not inconsistent with the act. In fact, because the legislature is presumed to be aware of the common law when it enacts statutes, we believe the legislature intended that workers' compensation insurers be subrogated to the rights of employers. See, e.g., *R.C. Equity Group, LLC* v. *Zoning Commission*, supra, 285 Conn. 257 n.20. If it did not, it would have had to explicitly state such intention. See *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 789 ("[a]lthough the legislature may eliminate a [common-law] right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed" [internal quotation marks omitted]).

Third, we agree with the defendants that the act, and specifically § 31-293 (a), created a right in employers that did not exist at common law. The scope of an *employer's* right to intervene in or bring an action against a third-party tortfeasor, therefore, consists of only those privileges provided by the statute. See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 383 (stating § 31-293 [a] deviates from common law and, consequently, must be strictly construed). The *insurer's* right to be subrogated to the employer's rights

under § 31-293 (a), however, is derived from the common law. Moreover, equitable subrogation is a judicially favored doctrine and is generously applied. *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 372 ("[s]ubrogation is a highly favored doctrine . . . which courts should be inclined to extend rather than restrict" [citations omitted]). Thus, the scope of the employer's rights under § 31-293 (a), for example, against a person who constitutes a third party, must be derived from the statute, but an insurer's right to be subrogated to, and therefore assert, the employer's rights does not. Of course, in an equitable subrogation action, the insurer steps into the shoes of the insured, and, consequently, the insurer will not be able to assert any greater rights than could the employer if it had brought the action. See *Fireman's Fund Ins. Co.* v. *TD Banknorth Ins. Agency, Inc.*, supra, 309 Conn. 455 ("subrogation allows a party who has paid a debt to step into the shoes of another . . . to assume his or her legal rights against a third party" [internal quotation marks omitted]). For example, if an employer could not maintain an action against a particular tortfeasor because that tortfeasor was not a "third person" for purposes of § 31-293 (a); see, e.g., *Goodyear* v. *Discala*, 269 Conn. 507, 516, 849 A.2d 791 (2004) (employer could not intervene in injured employee's legal malpractice action, which claimed employee's former attorneys failed to bring personal injury claim against tortfeasor who caused employee's compensable injuries, in part because attorneys were not "third persons" as that term is used in § 31-293 [a]); the insurer also would be unable to bring an action against such person because the doctrine of equitable subrogation does not expand the employer's right when asserted by the insurer; it simply allows the insurer to assert such right.[8]

The defendants also contend that allowing Pacific, and similarly situated workers' compensation insurers, to bring equitable subrogation claims is contrary to the expectations of the parties. The defendants claim that the act, specifically § 31-293, clearly delineates the rights, and therefore the expectations, of the parties involved, namely, that employers and employees can bring an action against third-party tortfeasors, that insurers expect to have a lien on judgments received by employers or employees, and that third-party tortfeasors expect any claim to be brought under § 31-293. This court has in the past considered the expectations of the parties in determining whether subrogation should be allowed. See, e.g., *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 270–75, 994 A.2d 174 (2010); *Wasko* v. *Manella*, supra, 269 Conn. 547–49; *DiLullo* v. *Joseph*, 259 Conn. 847, 854–55, 792 A.2d 819 (2002). Because the defendants' motions to dismiss were granted, the record does not reveal any facts regarding the specific expectations of the particular parties involved in the present case. Thus, our discussion of

the parties' expectations will necessarily be in regard to the general expectations of employers, employees, workers' compensation insurers, and third-party tortfeasors under the act.

In *Wasko*, this court recognized a homeowners insurance carrier's right to be equitably subrogated to its insured and to bring an action against a social guest who negligently caused fire damage to the home. *Wasko* v. *Manella*, supra, 269 Conn. 532. In so doing, we concluded that allowing subrogation would not upset the expectations of the parties. Id., 547. We noted "that most social guests *fully expect* to be held liable for their negligent conduct in another's home . . . ." (Emphasis in original.) Id. The homeowners in *Wasko*, we reasoned, could have brought a negligence claim directly against the tortfeasor, and there was "no logical reason for the [tortfeasor] to be unjustly enriched merely because he burned down the home of a party that had the foresight to purchase fire insurance, and subsequently chose to submit a claim to that insurance company rather than to proceed directly against him." Id., 549. Likewise, in the context of workers' compensation, the employee or employer may bring an action against a third party responsible for an employee's injuries, and we see no reason why allowing the insurer to bring such an action, rather than the employee or the employer, would upset the parties' expectations. See id.; see also *Allstate Ins. Co.* v. *Palumbo*, supra, 296 Conn. 270 (denying homeowner insurer subrogation in part because defendant, insured's fiancé, would not expect *insured* to bring action against him for his negligence).

In sum, we conclude that, under the common law, an insurer that has indemnified the loss of an insured under circumstances in which a third party is legally liable for such loss, has the right to be subrogated to the insured's rights against the liable third party. Moreover, we have uncovered nothing in the act that abrogates such rights. Accordingly, we conclude that Pacific can *assert* an equitable subrogation claim against the defendants, and, therefore, that the trial court improperly granted the defendants' motions to dismiss. We have not decided, however, that subrogation should be *ordered*. Said differently, we express no opinion as to whether Pacific has established its right to recover from the defendants. "[O]rdering subrogation depends on the equities and attending facts and circumstances of each case. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Citation omitted; internal quotation marks omitted.) *Allstate Ins. Co.* v. *Palumbo*, supra, 296 Conn. 260. "[A]n insurer may not be allowed to recover from any party whose equities are equal or superior to [its own equities]." (Emphasis omitted; internal quotation marks omitted.) Id., 282 (*Zarella, J.*, dissenting). Thus, the present case

must be remanded to the trial court for consideration of the competing equities of Pacific and the defendants. In balancing the equities, the trial court should consider, among other things, if subrogation is denied, whether either Doughty or the defendants will be unjustly enriched, the impact on our public policies of containing the cost of the workers' compensation system and disfavoring economic waste, and the expectations of the parties.

Moreover, because Pacific has stepped into the shoes of its insured, Reliable, the defendants may assert any defense they would be able to assert against Reliable or Doughty. In addition, we note that Pacific, as subrogee of Reliable, is subject to the same statutory obligations as Reliable would have been if it had brought this action. For example, Pacific must comply with the notice and apportionment provisions of § 31-293 (a). Finally, nothing contained herein relieves the insurer of any obligation to provide a rate adjustment under § 31-293 (b).

The judgment in SC 19402 is reversed and the case is remanded for further proceedings in accordance with the preceding paragraphs; the appeal in SC 19403 is dismissed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justices Palmer, Eveleigh and Espinosa were not present when the case was argued before the court, they have read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] On June 14, 2013, Doughty filed a motion to intervene and an intervening complaint. The trial court granted the motion on July 3, 2013. Doughty's action is pending in the trial court.

[2] Because we subsequently conclude in this opinion that Pacific can assert an equitable subrogation claim, we need not reach Pacific's statutory subrogation or substitution claims.

[3] Each of the three defendants filed its own motion to dismiss and supporting memorandum. The arguments made by each defendant, however, are largely identical and will be treated together.

[4] At oral argument in the present case, defense counsel argued that *Connecticut Mutual Life Ins. Co.* stands for the proposition that under the common law no insurer has a right to recover against a third-party tortfeasor directly, and quoted the following language: "[T]here is no doubt of the right of an insurer, who has paid a loss, to use the name of the insured, in order to obtain redress from the author of the wrong; a right to be exercised for the benefit of the party equitably entitled to its benefits, not to be enforced by its possessor in his own name . . . ." *Connecticut Mutual Life Ins. Co.* v. *New York & New Haven Railroad Co.*, supra, 25 Conn. 277. In their brief, the defendants also argue that an insurer may only bring its subrogation action in the name of the insured. We view this not as an argument that the doctrine does not exist in the context of workers' compensation but, instead, as an argument regarding how the doctrine is properly pleaded. Insofar as the defendants argue that *Connecticut Mutual Life Ins. Co.* provides that Pacific has no right to bring the present equitable subrogation action in its own name but could have brought this action in the name of its insured, Reliable, we are not persuaded. What might have been procedurally true in 1856 is not necessarily true today. Practice Book § 9-23 provides that "[a]n action may be brought in all cases in the name of the real party in interest, but any claim or defense may be set up which would have been available had the plaintiff sued in the name of the nominal party in interest." In light of this rule, we conclude that Pacific was well within its rights to institute this action in its own name. See 73 Am. Jur. 2d 681, Subrogation

§ 78 (2016) ("A subrogation action *may* be brought by the subrogee in the name of the subrogor. However, the *subrogee may sue in his own name* . . . ." [Emphasis added; footnote omitted.]); see also, e.g., *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 255, 994 A.2d 174 (2010) (equitable subrogation action brought in name of insurer, not insured); *Alfred Chiulli & Sons, Inc.* v. *Hanover Ins. Co.*, 294 Conn. 689, 690, 692, 987 A.2d 343 (2010) (insurer brought counterclaim in its own name and prevailed against general contractor for reimbursement of payments insurer made to subcontractors pursuant to payment bond, arguing insurer was equitably subrogated to rights of subcontractors); *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 365 (insurer asserted equitable subrogation in its own name); *GEICO* v. *Gonzalez*, Superior Court, judicial district of Fairfield, Docket No. CV-15-6049870-S (December 9, 2015) (insurer brought action against third-party tortfeasor to recover damages it paid insured). We do not think that this mere change in procedure, namely, in whose name an equitable subrogation action is instituted, changes the nature of the right or action. Despite the name in which the action is brought, the insurer is subrogated to the right of its insured and it is prosecuting such right. Finally, we note that in the present case, the caption reads "Pacific Insurance Company, [Limited], a writing company of The Hartford Financial Services Group, Inc., as subrogee of Stanford Dulaire D/B/A Connecticut Reliable Welding, LLC." In our view, there is no practical difference between bringing this action in Pacific's name, as subrogee of Reliable, and bringing it in Reliable's name.

[5] Public Act 97-58, § 4, provides: "No insurer providing underinsured motorist coverage as required under title 38a of the general statutes shall have any right of subrogation against the owner or operator of the underinsured motor vehicle for underinsured motorist benefits paid or payable by the insurer."

[6] General Statutes § 31-293 (a) provides in relevant part: "When any injury for which compensation is payable under the provisions of [the act] has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of [the act], a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and *any employer* or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter *may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee.* If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification . . . ." (Emphasis added.)

[7] Originally, the act provided the employer with subrogation rights. See *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 381. That is, when an employer paid workers' compensation benefits to an employee for injuries that a third party was legally liable for, the employer would be subrogated to the employee's right to recover from the third party. Id. Subsequently, the act was amended to replace the employer's right of subrogation with a right either to intervene in an employee's action against the third party or to bring a direct action against the third party. Id., 381–82.

[8] In a similar vein, the defendants argue that the act is a "comprehensive scheme" and provides the exclusive remedies for both employers and employees when a work-related injury occurs and a third party is liable for such injury. The act expressly allows employers and employees to proceed against a third-party tortfeasor, but does not provide a similar action for insurers, and therefore, the defendants claim, we must assume that the legislature "intentionally excluded a cause of action for the insurance company in the workers' compensation context." As we previously explained, however, the employer's right had to be expressly provided because it did not exist at common law. The insurer's subrogation right, on the other hand, was already in existence. Because the legislature is presumed to be aware of the common law when it enacts statutes, and because it did not expressly abrogate subrogation in this context, we must assume it intended that workers' compensation insurers would be allowed to assert equitable subrogation rights.

Insofar as the defendants claim that General Statutes § 52-225c, which provides in relevant part that "[u]nless otherwise provided by law, no insurer or any other person providing collateral source benefits . . . shall be entitled to recover the amount of any such benefits from the defendant or any other person or entity as a result of any claim or action for damages for personal injury or wrongful death regardless of whether such claim or action is resolved by settlement or judgment," abrogates subrogation rights in the context of workers' compensation, we conclude that such argument was not adequately briefed. The defendants have neither cited any authority to support such an argument nor have they explained why the statute applies in this context. See *Electrical Contractors*, *Inc.* v. *Dept. of Education*, 303 Conn. 402, 444, 35 A.3d 188 (2012) ("It is well established that [w]e are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." [Internal quotation marks omitted.]). Thus, we do not address this claim. We do note, however, our doubt that § 52-225c applies to workers' compensation carriers because workers' compensation benefits are not collateral source benefits. See, e.g., *Smith* v. *Otis Elevator Co.*, Docket No. CV-90-0275369-S, 1994 WL 76860, *1 (February 28, 1994) ("payments required to be made under the [act] do not fall within the express language used by the legislature to define collateral sources" [internal quotation marks omitted]).

_____